Ruffin, C. J.
 

 The court is of opinion, that the demurrer was properly overruled. The bill charges a bequest upon a secret trust for the benefit of the slaves; and the defendant must answer as to the truth of the charge. If the trust was expressed upon the face of the will, being against the public policy, the court would hold that it was void, and that a trust resulted to the next of kin.
 
 Haywood
 
 v. Craven,
 
 2
 
 Car. L. Rep.
 
 557.
 
 The same consequence follows, if it can be collected or implied from any incidental expressions in the will or deed.
 
 Huckaby
 
 v. Jones, 2 Hawks. 120.
 
 Stephens
 
 v. Ely, 1 Dev. Eq. 493.
 
 Lorcy
 
 v. Bright, 1 Dev. & Bat. 113.
 
 *341
 
 The doctrine of the court is well settled to be, that slaves can only be held as property, and deeds and wills, having for their object their emancipation, or a qualified state of slavery, are against public policy, and a trust results. Since the act of 1830, Rev. St. ch. 101, it is not unlawful to bequeath or convey slaves for the purpose of being removed out of the State in a convenient time, and emancipated there, and kept away from this State.
 
 Cameron
 
 v.
 
 Commissioners of
 
 Raleigh, 1 Ired. Eq. 436. But it cannot be supposed upon this bill, that such was the purpose or nature of the trust here; for there is no allusion to the removal of the slaves to be emancipated, but, on the contrary, it is charged that they were to be held by the defendant, nominally as their’s, to evade the law, but really for the benefit of the slaves themselves; which imports, that the purpose was not to send them abroad for emancipation there, but, rather, that they should remain in this State. But, if, in truth, the trust was to send them out of the State, and the defendant intends to do so, and will submit to do so under the direction of the court, and will enter into the obligations, which the law requires, that they shall not return, then let him thus answer, and that will terminate the plaintiff’s claim. But upon the supposition, that the trust was, that the slaves should be kept here, in which case the defendant could not carry them away without a breach of trust; or that it was,, that they should be removed, and the defendant declines removing them, or declines securing the public against their return, then it is manifest that there is a resulting trust for the plaintiffs. For the defendant, having taken them upon a trust, can, under no circumstances, hold them with a good conscience, or be allowed by the court to hold them, as slaves for his own use. The testatrix gave them to him with no such purpose, but upon trust. Therefore, he holds as trustee at all events, and the only question is, for whom does he hold? Not for the slaves, because that the law forbade him to do. It follows, that he holds for the next of kin.
 

 But the trust is not expressed directly in the will, nor is there auy thing said in that instrument of any other, as al
 
 *342
 
 by which it appears by implication; and the question the defendant shall be obliged to discover it? We have no doubt, that he must. Both upon principle and au^ority, jt jg c]earj that he must be required to answer as to the fact, because, if he admits it, the same duties of conscience are unquestionably established against him, as if the trust was express on the face of the instrument. The law will not allow itself to be baffled, and its policy evaded, by secret agreements, the very objects of which are to defeat the law itself. Therefore, a legatee must say, whether he took the property for himself, as his property in the beneficial sense of the term, and not in the hollow and delusive sense of a mere
 
 legal
 
 title, in trust for some other person or purpose forbidden by law. It is said, that compels him to make a discovery, by which he forfeits the property conveyed to him by the will. But that is a mere play upon words ; for, in the view of this court, if he took upon a trust, no matter what, he has no property in the thing, but merely holds it as the property of another, the
 
 cestui que trust.
 
 He forfeits nothing, therefore, unless every trustee may be said to forfeit what the court compels him to convey, in execution of the trust assumed by him. The question is not, now, as to the evidence, by which a secret trust may be established against a party, who denies it by his answer, but is merely, whether the party may be called on to say, yes or no, to the charge of such a trust. The defendant does not even plead, that the gift is absolute upon the will; in which case, indeed, his plea would not be allowed, peremptorily, but only suffered to stand for an answer, with liberty to except.
 
 Strickland
 
 v. Aldridge, 9 Ves. 516. But he demurs and admits the facts for the purposes of a decision, whether, if they be true, the plaintiffs can have a decree. Now, if all this bill be true, there cannot be a doubt, that the plaintiffs are entitled to the relief they ask; and, therefore, the defendant must either admit or deny the truth of the charges. That the court will enforce such secret trusts, where they are not unlawful, and will, when they are void in law, declare them so,' and decree a resulting trust for the heir or next of kin, has been long es
 
 *343
 
 iablished. We have had a recent instance of the former kind before ns, the case of
 
 Cook
 
 v. Redman,
 
 2
 
 Dev. Eq. 623; in which we held, that a private promise, made to the testator by a legatee to hold in trust for another person, was binding and would be enforced; and, indeed, that a promise was not necessary, but that a silent assent to the known wishes of the testator was sufficient to raise the trust. So in respect to devises upon a secret trust for a charity, void under the mortmain acts, it is established doctrine, that they shall be declared void by the court, upon the admission of the answer; for
 
 nemo potest facere per obliquium, quod non potest facere per directum. Boson
 
 v.
 
 Statham,
 
 1 Eden, 508, 1 Cox. 16. The question was much discussed before Lord Eldon in Muck
 
 leston
 
 v.
 
 Brown,
 
 6 Ves. 52, and the result was, that he said the court would compel persons to discover secret agreements, made with a view to evade the provisions of the acts, and require devisees to answer, whether they took the estate, as they legally could not do, for charitable purposes. And in
 
 Strickland
 
 v.
 
 Aldridge,
 
 the devisee was required to answer a bill, charging such secret trust by way, simply, of allegation, without stating an inference of it from the will, or any other writing, or any evidence of it. These authorities come fully up to the present case, and, indeed, the last goes beyond it. For here the bill does state several strong facts, as evidence of the trust, which convey forcibly to the mind a clear impression, that there must have been some agreement to the effect charged, or that there was some understanding or belief and expectation by the testatrix, that the defendant would not hold these negroes as slaves beneficially, and that he either expressly assented thereto, or by his silence induced her, and intended to induce her, to think that ho meant to comply with her views. It is, for example, stated, what we believe is notoriously true, that it is an article of religious faith among that respectable society, called Quakers, that it is wrong to hold persons in slavery ; that the testatrix knew that, and also well knew the defendant, and that he was a member of that society, and was conscientiously scrupulous of holding his fellow men in slave
 
 *344
 
 ry for his own benefit; and it is thence inferred, that the íestatrix made these bequests to him for that very reason, because she wished and expected that he would hold the negroes in a Ktate 0f
 
 qUasi
 
 freedom. And it is charged, in support of that inference, that, upon the trial of the contest about the probate of the will, the present defendant proved, that the testatrix had those intentions, and made declarations of that import. Now, although such expectations and intentions of the testatrix do not make an express declaration of the alleged unlawful trust, yet, it is clear, as Lord Eldon said in
 
 Strickland
 
 v.
 
 Aldridge, that
 
 a trust would be created upon
 
 the
 
 principle, on
 
 which the
 
 court acts as to fraud. For it would be a clear fraud on the testatrix to suffer her to suppose, that the defendant, who understood her wishes, would carry them out without her inserting the directions in her will, and then to set up the will asan absolute gift, not coupled with any trust whatever. There-r fore the defendant must answer to all those circumstances, in order that it may be seen, whether he is not practising an imposition on the testatrix .in the first place; and then, in the next, he must answer to the alleged purpose in both of them to evade the law of the country and its policy. And itisobvious, that, if the principles of this gentleman are as alleged, and he has reason to believe from that, or the other circumstance of declarations as proved on the trial, that she really expected him not to keep these negroes in servitude as his own slaves, would require a very plain, positive, and unevasive denial such undertaking, on his part, to obtain credence; an undertaking, that may be contracted, not merely by words, but also, under circumstances, by silence.
 
 Paine
 
 v.
 
 Hall,
 
 18, Ves. 475.
 

 Some minor objections were taken to the bill, which, though not necessary, it may be proper to notice. First, it is said the plaintiffs have no right to a discovery of the defendant’s belief, as it is not a legal test of his right to hold property. The answer is, that the charge of the defendant’s religious creed is not inserted for the sake of a discovery, which can produce g forfeiture, qr subject Jaira to a penalty, for in our law no
 
 *345
 
 such consequence follows from the professing of any religion. Nor is it even to expose him to opprobium, for it is to the gle point, whether he does not in conscience scruple to hold men in bondage, and whether that was not known to the testatrix and formed, in his belief, an inducement to her to make this disposition to him. Now, there is certainly nothing criminal or discreditable in the eye of the law, or of any person, that one should, out of tenderness of conscience for the rights of his fellow man, refuse to have a property in him, though allowed by human laws 5 but rather the contrary, it is much to the credit of his disinterestedness and Christian charily, the principle be truly carried out in practice. The only possible imputation that can be made, on this transaction, against the defendant is, not as to this article of his creed, but as to projecting by a secret contrivance to evade the law of the country, or in agreeing and giving the party, who projected it, to understand that he would endeavor to execute the contrivance. The sole subject, therefore, of making this enquiry is, to ascertain from it, as evidence, whether the testatrix did not make this bequest upon some secret understanding with the defendant, that he would not hold the negroes in servitude. No discovery upon it can be a detriment to his property or his privileges as a citizen.
 

 It is next said, that under the Statutes, Rev. St. c. Ill, sec. 31, 32, there are penalties on owners of slaves, who hire to them their time or let them keep house and go at large as free persons, and therefore the defendant is not bound, to answer. But in relation to these slaves, there is no charge in the bill of that sort. It only alleges, that the bequest was made upon a trust, that they should be allowed to labor for their own benefit, and act as free persons, and not that the defendant has, in fact, allowed them thus to act. There are charges of that character in relation to some other negroes, for which it is said the defendant had accepted conveyances from other persons. But that is to be considered as struck out of the bill by the plaintiffs themselves, by way of amendment under leave of the court, and no longer presents the objection, if it ever
 
 *346
 
 did. Indeed, we must say, that if the plaintiffs had. appealed that Part °f the decree, it could not have been sustained, for, with a very few exceptions, and those founded on favor, tj10 mje {jjjg iong peen settled, that a demurrer,-unlike a plea, must be overruled
 
 in toto,
 
 unless it be good in its full extent. If it cover too much, as if it be to the whole bill, when the plaintiff is entitled to discovery and relief upon some part, it must be overruled, for it cannot be held bad in part, and good in part.
 
 Mayor of London
 
 v. Levy, 8 Ves. 398.
 
 Todd
 
 v.
 
 Eyre,
 
 19 Ves. 280. But with that we have no concern at present, as this is the appeal of the defendant from an interlocutory decree, and, under the act, brings up nothihg more than the single question from which his Honor allowed the appeal to be taken. Upon that question, we conour in the opinion of his Honor.
 

 Pee. Curiam, Ordered that this opinion be certified to the court below.