J. H. BARNARD v. E. L. HAWKS et al.

*Trustees and Cestui que Trustant—Contract in Writing not Varied by Parol Testimony—Corporations—Stock.*

1. Oral testimony cannot be admitted to contradict or vary the terms of a written contract, and a defendant in a proceeding to convert him into a trustee for plaintiff to hold for his benefit money received on trust, as shown by a written contract, was not allowed to show by parol that it was intended as a loan.

2. When, in contemplation of the formation of a new company, it was agreed that upon purchase in their own name by the parties of the second part of a certain interest in an existing company's property, the said parties, in consideration of the advancement of the purchase-money for one-half of their subscriptions by the parties of the first part, were to assign to them one-half of their entire interest to be acquired, and the advancement was made pursuant to such agreement: *Held,* that the purchaser held the property or stock in trust for the parties of the first part, and that the same could be followed in the hands of third parties.

This was a MOTION for an injunction, heard before *Whit- aker, J.*, at Clinton, in SAMPSON County, October 11, 1892.

On the hearing the plaintiff introduced the contract mentioned in complaint (which was used as an affidavit), marked " A," whereupon the defendant proposed to show by affidavits that the money which the complaint, or affidavit, alleged to have been advanced under and in pursuance of said contract, was advanced as a loan simply, and that the stock which the defendant contemplated purchasing from the Electric Plant Company, as therein set out, was to be assigned to the plaintiff as a collateral security for the payment of said loan, and for no other purpose, which his Honor refused, holding that no evidence was admissible to vary or alter the written contract, and the defendant excepted.

It was further shown that the stock originally purchased by the defendant from the Electric Plant Company, had

been sold by the defendant, and the stock now held by the defendant Hawks in the Twin City Construction Company, as set out in plaintiff's affidavit, had been purchased by him with Electric Plant stock, and the certificate of said stock was issued to him in his own right, and so stands upon the stock books of the Twin City Construction Company.

His Honor held that the defendant Hawks having held the Electric Plant stock as trustee for the plaintiff, the plaintiff was entitled to follow the fund arising from the sale thereof and invested in the stock of the Twin City Construction Company; and that the defendant Hawks held the said stock as trustee for the plaintiff, to which ruling the defendant excepted.

It was further shown that the defendant was a resident of the State, and solvent.

His Honor held that the plaintiff was entitled to an injunction until the final hearing, and so ordered, to which the defendant excepted, from which judgment defendant appealed to the Supreme Court.

*Defendant's Exceptions.*—His Honor erred in refusing to allow the defendant to introduce affidavits to show that the money advanced under the contract between plaintiff and defendants was advanced as a loan, and for no other purpose.

His Honor erred in holding that the plaintiff had a trust in the stock purchased by Hawks from the Electric Plant Company, and that Hawks held the same as trustee for plaintiff's benefit.

His Honor erred in holding that the defendant Hawks held the stock now in the Bank of New Hanover, to-wit, the $5,000 stock in the Twin City Construction Company, as trustee for plaintiff; and that the plaintiff had the right to follow the fund arising from the sale of the Electric Plant Company and invested in the Twin City Construction Company stock.

His Honor erred in holding that the plaintiff was entitled to an injunction in this case until the final hearing.

## EXHIBIT A.

MEMORANDUM OF AGREEMENT BETWEEN JOHN H. BARNARD, OF ASHEVILLE, N. C., PARTY OF THE FIRST PART, AND E. L. HAWKS, OF LEXINGTON, KY., AND J. H. WINGATE, OF ROANOKE, VA., PARTIES OF THE SECOND PART.

WHEREAS, Both parties are desirous of securing the formation of a company to extend the operation of the present electric plant in Winston, N. C., and to operate an electric street railway in that town and the adjoining town of Salem ; and, whereas, the parties of the second part can secure the same by the advancement, before December 18, 1889, of two-fifths ($\frac{2}{5}$) the cost of the present plant, with its charter, franchises, rights, business, etc.; and, whereas, the party of the first part is willing to advance for them one-half ($\frac{1}{2}$) of their subscription, the following conditions are mutually agreed upon :

*First.* That upon the purchase of the above property the parties of the second part shall assign to the party of the first part one-half ($\frac{1}{2}$) of their entire interest acquired by the same.

*Second.* That they shall divide equally with the party of the first part their share of the net earnings from the date of purchase to the date of sale to the construction company to be formed as set forth in the agreement of this date between E. L. Hawks, J. H. Wingate, F. J. Sprague, Edward H. Johnston and J. H. McClemment.

*Third.* That upon the demand of this construction company, and upon the tender of a sum equal to the amount advanced, the party of the first part agrees to surrender all right, title and interest in the above property.

(Signed)        JOHN H. BARNARD,<br>
E. L. HAWKS,<br>
J. H. WINGATE, per E. L. H,

Signed this 13th day of December, 1889.

*Messrs. George Rountree* and *John D. Bellamy,* for plaintiff.
*Mr. John N. Staples,* for defendants.

SHEPHERD, C. J.: The argument on the part of the defendants was predicated, to a great extent, upon the theory that the money furnished by the plaintiff was simply a loan to the defendants Hawks and Wingate, and it was insisted that, as they were impliedly authorized to purchase the stock in their own names, they acquired an unqualified property therein, and that the agreement to assign to the plaintiff was therefore nothing more than an executory contract for the sale of personal property, which, as a general rule, will not be specifically enforced in equity.

Under the view we have taken of the transaction, as evidenced by the written agreement (his Honor having very properly excluded the oral testimony tending to contradict or vary its terms), we deem it unnecessary to pass upon the points so ably discussed by the respective counsel, whether stock of this particular character is the subject of specific performance, and if so, whether it must be owned by a party at the time of his contract to sell and assign the same.

Our interpretation of the contract is that the stock of the electric company was to be purchased by the defendants Hawks and Wingate with a view of securing its plant, &c., to be used by a new company, which was to extend the business so as to operate an electric street railway in the towns of Winston and Salem. This new company, so far as it appears from the record, was to be composed not of these two defendants alone, but also of S. J. Sprague, Edward H. Johnson and J. H. Clement, and it was only for the purpose of facilitating the formation of such company that the plaintiff furnished one-half of the amount necessary for the purchase of the said stock. It was agreed that, upon the purchase of the stock by the said defendants, they were to assign one-half of it to the plaintiff, who was to hold the same and

receive its net earnings until the particular company above mentioned should demand its surrender upon tendering a sum equal to the amount advanced. It is very evident that, had these defendants performed their agreement and assigned the stock to the plaintiff, they could not, as individuals, have compelled him, upon tender of said amount, to surrender or transfer it to them. The contract is plain upon this point, and provides, in substance, that the plaintiff is to remain the owner until the formation of the new company, under an agreement between certain parties named therein, and, as it does not appear that such new company was ever constituted, we are unable to see how these two defendants, or, indeed, anyone else, could have compelled the plaintiff to transfer the said stock.

Such being the rights of the plaintiff had the said defendants performed their agreement, it remains to be determined whether there is any principle of law or equity which will enable them to profit by its violation.

If the money had simply been loaned to these defendants, and they had been authorized to purchase for themselves alone, it would be a question, not altogether free from difficulty, whether a mere contract to sell the stock could be specifically enforced. Such, however, is not the case presented in the record. The defendants, as we have said, took the money of the plaintiff under an express agreement to purchase the stock and transfer it to him, and there is absolutely nothing to warrant the inference that the defendants were to become its beneficial owners, or that either party had the slightest conception that, in providing for its transfer to the plaintiff, the latter was purchasing from the defendants. It was the plaintiff's money that paid for it, and, in the absence of any agreement, there would have been a resulting trust in his favor. *Hargrave* v. *King,* 5 Ired. Eq., 430; Adams' Eq., 33; Malone R. P., 489.

We are unable to see how the express agreement of the defendants to do that which, under the same circumstances, a court of equity would have compelled them to do, can, in the least, affect the plaintiff's rights in the premises. Much importance is placed upon the fact that the defendants were authorized to take the stock in their own names, but, as we have seen that they were purchasing the same with the plaintiff's money under an agreement to immediately assign it to him, we are of the opinion that this circumstance did not prevent them from becoming trustees in the transaction. Even had this been land, and the defendants had paid the purchase-money, and taken the title under a parol agreement to hold it for the plaintiff, subject to his right to repay the purchase-money, the Court, upon sufficient testimony, would have declared them trustees. This was substantially decided in *Cohn* v. *Chapman*, Phil. Eq., 92, in which it was held, upon the principle of trust, that such an agreement was not within the statute of frauds. A case very similar to the one now before us is to be found in *Stevens* v. *Wilson*, 18 N. J. Eq., 447. The plaintiff filed a bill to compel a transfer of two hundred shares of stock, purchased by the defendant with money advanced upon the following order to one Shippen: "Please pay to order of D. M. Wilson $5,000, for which he will give you a receipt to be paid in stock of the Newark Plank Road Company, say two hundred shares, or money return in same proportion at that rate, $25 per share." The defendant executed the following receipt: "Received, Hoboken, April 20, 1860, $5,000 as per stipulation within, to be transferred to order or request of Mr. Stevens, when he shall desire." The relief prayed for was granted, upon the principle that the defendant held the stock in trust. The Court said that when the defendant "purchased the stock with Stevens's money, according to the rule of equity he held that stock as trustee for Stevens, and nothing but a clear, positive agreement by Stevens will enable

him to speculate on the trust property for his own benefit."
In speaking of this decision in *Cutting* v. *Dana*, 25 N. J. Eq.,
265, the Court stated that it "was a suit in which the com-
plainant filed a bill to compel the defendant to deliver to
him certain shares of stock purchased by the defendant with
money furnished by the complainant, on an agreement that
the defendant would transfer the same to the complainant
on request.     *There was a trust, however, in that case.*"

The present transaction, as we have seen, was not a mere
loan of money to the defendants to use as they pleased, but
it was for the special purpose of purchasing the stock for the
plaintiff and an immediate transfer to him.     But for this
stipulation, it is fair to assume that the money would not
have been furnished, and we are decidedly of the opinion
that the defendants held the stock in trust for the plaintiff.

Instead of performing the trust by an assignment to the
plaintiff, they exchanged it for stock of equal amount in the
Twin City Construction Company.     This stock was deposited
with the defendant Bates as security for a loan of money to
the defendants, which debt has been paid, and the stock is
still in the hands of said Bates.     The substituted stock, being
thus traced and identified, may be followed in equity and
impressed with the original trust.   " A principal, in all cases,
where he can trace his property, whether in the hands of
the agent or of his representatives or assignees, is entitled
to reclaim it, unless it has been transferred *bona fide* to a
purchaser of it, or his assignee, for value without notice.     In
such cases it is wholly immaterial whether the property be
in its original state, or has been converted into money, secu-
rities, negotiable instruments or other property, if it be dis-
tinguishable and separable from other property or assets,
and has an earmark or other appropriate identity."     *Whitley*
v. *Foy*, 6 Jones Eq., 34, and the cases there cited.     See, also,
*Edwards* v. *Culberson, post*, 342, where the authorities upon
this subject are fully set forth.

We think that the plaintiff has made out a *prima facie* case, and that his Honor committed no error in continuing the injunction to the hearing.

Affirmed.