The action was commenced in the Superior Court of Moore County five days before W. B. Richardson died. It was thereafter removed to Chatham County. Since then Lewis Grimm has died, and his heirs at law have been made parties defendant, and have answered. The original plaintiff (Richardson) died, and Kelly was made plaintiff.
The purpose of this action was to set up a parol trust in certain lands in Moore County.
The plaintiff alleged, among other things:
1. That on and shortly before the first Monday in March, 1886, the plaintiff was indebted in a considerable amount to E. J. (350) Lilly, Roberts, Beall Co., A. L. Elliott Co., with other creditors, whose claims had been reduced to judgment, execution sued out and placed in the hands of the Sheriff of Moore County, who had levied upon and advertised for sale large quantities of land and valuable real estate belonging to the plaintiff in said county.
2. The plaintiff, being unable to meet, pay off and discharge the claims and demands of said creditors and to save his lands and real estate (which at a fair price were largely more than sufficient to pay said debts) from being sacrified [sacrificed] at execution sale, contracted and agreed with his friend and son-in-law, Lewis Grimm, and his lifelong friend and adviser, A. H. McNeill, as follows: That said Lewis Grimm and A. H. McNeill were to purchase said lands and real estate at said sale under execution for the benefit of the plaintiff, and account to the judgment creditors for the amount of such sale, or pay the bids therefor to the sheriff; that they were to hold said lands and *Page 215 
realty in trust for the plaintiff, to sell his interest in what is known as the "Barrett old field," near Carthage, adjoining the lands of W. T. Batley, Thomas B. Tyson and others, containing 374 acres, more or less, in different tracts, and such other lands as might be necessary to reimburse themselves for said outlay, with costs and interest, and that afterwards plaintiff should be allowed to redeem, and said defendants were to reconvey such of said lands and premises as were not necessary to sell to reimburse themselves to the plaintiff by a deed of quitclaim and fee.
3. That defendants purchased the judgments against plaintiff, procured his lands to be sold under execution, bought at such sale in furtherance of the alleged agreement and took a deed for same through the sheriff.
4. That although the amount of said bids was near $2,500, defendants, as plaintiff is informed and believes, have paid out only the sum of $1,200 and costs, applied on executions in favor of E. J. Lilly, Roberts, Beall Co. and A. L. Elliott Co., (351) the remainder being applied on judgments theretofore paid off by plaintiff and assigned to Lewis Grimm and A. H. McNeill for plaintiff's benefit.
5. That, as plaintiff is informed and believes, the defendants, in furtherance of said contract and agreement, have sold and conveyed that portion of land known as the "Barrett old field," adjoining the lands of W. T. Batley, Thomas B. Tyson and others, containing 374 acres in several tracts, for the sum of $1,000, and perhaps other tracts of said lands for other sums of money, which said amounts should be applied and appropriated to the extinguishment of the amounts advanced by the defendants on said sales; that such amounts as were appropriated and applied on executions issued upon judgments belonging to the plaintiff and assigned to defendants should also be credited upon the amount of said bids.
6. That after said sale by W. M. Black, Sheriff of Moore County, under said executions, the defendants procured said lands to be sold by John L. Currie, Sheriff of Moore County, under other executions, for the purpose, as plaintiff is informed and believes, of curing some irregularities in the first sale, and that at said sale, the defendants purchased said land at some inconsiderable price.
7. That the value of said lands sold is greatly in excess of the amount of bids at both sales, being more than three times the amount of said bids, and that said lands did not bring anything like a fair price, because the bystanders at said sale believed that defendants were purchasing said lands for the benefit of plaintiff, the debtor. *Page 216 
8. That before the commencement of this action, and within the past two years, plaintiff requested of the defendants that they come to a settlement of the trust committed to them as aforesaid, and (352) that they receive from him such amount, if any, as may be due them on account of expenditures and disbursements in purchasing said lands and in paying said bids, together with interest and costs, deducting such amounts as they may have received from the sale of said lands, and that thereafter the defendants convey such of said lands as had not been sold in pursuance of the contract to the plaintiff; but that defendants refused to come to an account or to make any statement of any account due them as aforesaid, or to convey to the plaintiff as requested.
9. That plaintiff has heretofore been and is now willing and anxious to pay defendants whatever amounts have been expended by them, with interest and costs, under and in pursuance of said agreement and contract, and hereby tends the same when ascertained and prays for judgment:
1. That defendants come to an account with plaintiff as to their disbursements, expenditures and receipts, had and made by reason of the contract and agreement heretofore alleged, and that the nature and extent of such dealings, together with any balance due defendants by reason thereof, be ascertained.
2. That defendants receive from plaintiff such balance, if any, with interest and costs incurred; that plaintiff be permitted to redeem said lands and real property, and that defendants, upon receiving such amounts as may be due them by reason of the aforesaid tranactions [transactions] under said agreement, be compelled to convey to plaintiff such of said lands as have not been sold by them under the agreement, saving and excepting (certain lands which plaintiff does not claim).
The defendants denied the material allegations of the complaint — especially the allegation that they or those under whom they (353) claim had purchased the judgments or lands referred to in the complaint, under any agreement to allow plaintiff to redeem or in trust for him.
The issues submitted by the court, with the responses of the jury thereto, are:
1. "Did Lewis Grimm and A. H. McNeill purchase the lands described in the complaint, in trust for W. B. Richardson, upon the agreement that they, the said Grimm and McNeill, when reimbursed for their outlay, as alleged in the complaint, would reconvey to said Richardson?" Answer: "Yes." *Page 217 
2. "If so, was said transaction made with intent to hinder, delay or defraud the creditors of said W. B. Richardson?" Answer: "No."
There was evidence offered by both plaintiff and defendants tending to establish their respective contentions, and there were a number of exceptions taken by the defendants to the introduction of testimony and to the refusal of the court to give special instruction prayed by defendants, and to the charge of the court as given; but as the case was determined in this Court upon one point which entitled defendants to a new trial, a statement of the other exceptions is unnecessary.
The defendants appealed.
The defendants requested the court to instruct the jury, among other things, that in order to establish the trust it was essential that the plaintiff should offer some strong, clear and convincing proof of an agreement between Grimm and McNeill and Richardson, made antecedent to the sale, to the effect that the land should be purchased by them upon the trust set up in the complaint. This instruction was not given, either in terms or in substance, and (354) the failure to grant the prayer is assigned as error.
In order to establish a parol trust of this kind, the plaintiff must prove an agreement to buy, entered into by the defendant on an occasion anterior to the time of sale or at the sale, and before the purchase was actually made. A declaration by a defendant, when the property is offered to bidders, but before the purchase is made, is said to be contemporaneous, in the sense that it is a part of the same transaction in which the sale is accomplished. But the bargain must be shown, by declaration or otherwise, to have been entered into prior to the selling, though but an instant before. Subsequent agreements by parol are void, under the statute of frauds, whether made the next moment or the next year. The declaration to uses was made before the terre-tenant had been completely invested with the legal state, and it is such declarations that has been held not to fall within the provisions of our statute (The Code, secs. 1552, 1554), substituted for 29 Car. II. So that, strictly speaking, any agreement that is relied upon to engraft a trust upon what appears upon its face to be an absolute deed, though it accompany the act of buying, must be made in advance of the transmission of any interest by the sale. Cobb v. Edwards,117 N.C. 244. It is the province of the jury to determine whether the proof is clear and convincing to their minds, but they *Page 218 
must find that there is some evidence of the antecedent understanding, and sufficiently strong to convince them that the parties concurred in giving their assent to it. Cobb v. Edwards, supra; Helmsv. Green, 105 N.C. 251; Ferrall v. Broadway, 95 N.C. 551; Berry v. Hall, 105 N.C. 154.
(355) It is clear that, in refusing the instruction asked, there was error which entitles the defendants to a
New Trial.
Cited: Avery v. Stewart, 136 N.C. 431; Taylor v. Wahab, 154 N.C. 224.