## WILLIAMS v. AVERY.

(Filed October 28, 1902.)

1. CONTRACTS—*Abandonment—Instructions.*

An instruction relative to the abandonment of a contract, there being no evidence of abandonment, is erroneous.

2. CONTRACTS—*Trusts and Trustees—Foreclosure of Mortgages—Sales.*

A contract by a purchaser at a foreclosure of a mortgage to hold the land for the benefit of the mortgagor until he could redeem it, is binding on a re-sale necessitated by failure of the purchaser to pay the purchase price, though he claimed to purchase at the second sale for a third party.

ACTION by J. W. Williams and others against Calvin Avery and others, heard by Judge *M. H. Justice* and a jury, at October Term, 1901, of the Superior Court of BURKE County. From a judgment for the plaintiffs, the defendants appealed.

*Avery & Erwin,* for the plaintiffs.
*S. J. Erwin,* and *J. M. Mull,* for the defendants.

COOK, J. Defendant relies upon the second and third exceptions taken to the charge of the Court to the jury. That part of the charge to which the second exception is taken is, "If they found this agreement, made prior to the first sale, was abandoned prior to the second sale, then such agreement would not extend to the second sale, and they should answer the issue, 'Was said land purchased by the plaintiff Julia T. Hayes, or her agent, at said sale, under a contract with defendant Calvin Avery that he, said Avery should be allowed to redeem the same upon payment of the amount bid at said sale?'—'No.' "

Defendant contends that this part of the charge was erro-

neous, upon the ground that there was *no evidence* tending
to show any *abandonment* of the contract by him. This con-
tention must be sustained because it nowhere appears in the
evidence certified to us that defendant, by act or word, did
or said anything inconsistent with the purpose to raise the
money and redeem his land under his alleged agreement with
Dr. Tull, made on the day of and shortly before the first sale.
Whether the agreement was made was the question in dispute
between the parties, to be settled by the finding of the jury.
Dr. Tull denied that he made such agreement, and testified:
"No contract with Avery to bid in land for him; I probably
told him before the first sale to tell Mr. Wall to bid in land
and I would give him chance to pay for it. He never said
anything more about it till after the second sale, but it was
re-advertised and re-sold; never had any agreement with
him to buy it at the second sale; I bid it off at second sale
for Mrs. Hayes, and deed was made to her. When Laxton
came, I told him I would have to write to Mrs. Hayes and
see whether she wanted to sell the land." * * * De-
fendant testified: "Dr. Tull told me before the first sale that
he would save the land for me and buy it in for me and take
care of it for me; * * * after sale (first sale), I told
Dr. Tull I was going off to make the money, and I went to
Marion to work, and stayed fifteen days, and my family got
down with fever; * * * went to Marion two weeks
after first sale; second sale while I was in Marion. I knew
nothing of second sale. * * * Dr. Tull told me after
second sale that he wanted me to pay, and I told him I didn't
have the money. I got Mr. Laxton to go with me to Dr.
Tull and offer him the money, and he declined it." * * *

No evidence of the abandonment of the alleged contract
appearing, it was error to have given such charge.

The third exception is to a part of the charge given in
response to an inquiry by the jury, after they had retired

and returned into Court the next day and asked, "If an agreement made prior to the first sale would extend to the second sale?" In response to this inquiry, the Court replied "that would depend on circumstances. If, at the first sale, Tull bid in the land in his own name for defendant, under an agreement with defendant that he would hold it for him until defendant could repay him his money, and the first bid was not paid nor title made, and mortgagee sold the land, and at second sale he again bid in the land in the name of his daughter and caused the deed to be made to her, and this was done as a mere pretense or subterfuge, and for the purpose of defrauding the defendant out of his rights under his contract with him, then the contract made prior to the first sale would extend to the second sale; but if Tull, at the second sale, was authorized by his daughter, Mrs. Hayes, to purchase the land for her, and he did so at her request with her money, and in good faith, and not for the purpose of defrauding the defendant under his contract; or, if the contract had been abandoned by the parties, then the agreement would not extend to the second sale."

In this charge we think his Honor also erred. While there is no evidence tending to show that Tull was authorized by his daughter to purchase the land for her, or that he did so at her request with her money, nevertheless, whether he bid in the land for his daughter in good faith or for the purpose of defrauding the defendant, the contract made before the first sale would continue and remain as *then* made. How that contract could be changed, modified or abrogated, so as not to extend to the second sale, by any act or conduct of Tull, without the consent of Avery, we can not see. If he assumed the trust, he could not release himself from it by making a contract with a third party, whether in good faith or fraudulently; nor could he do so by causing the land to be sold a second time and then purchasing at said second sale.

Having defaulted in the payment of his bid at the first sale, had he promptly notified Avery of such default and of his failure to acquire title, and of his abandonment of the contract, so that Avery could have protected his interest at or before the second sale, then no trust would have attached to the land, should he have purchased at a second sale. But he could not in good conscience obtain an advantage in buying at the second sale by his bad faith in defaulting at the first.

For the errors above declared there must be a

New Trial.