This action was brought to establish and enforce a parol trust. The plaintiff alleges in his complaint that John Humphrey and his wife, being the owners of a tract of land in Craven County containing about ninety-seven acres, contracted to sell the same to him at the sum of five hundred dollars and that he, not then being able to pay the stipulated price, informed the defendant Stewart of his contract with the Humphreys and requested the defendant to buy the land for him and allow him three years to pay the purchase money; that the defendant agreed to this proposal, with the proviso that plaintiff should pay him one hundred dollars for the "accommodation," and the plaintiff assented to this proviso, and thereupon promised and agreed to pay the defendant the one hundred dollars and the purchase money within three years at six per cent interest; that afterwards, on 28 October, 1901, Humphrey and his wife conveyed the land to the defendant, and on 10 December of the same year the defendant, in violation of his agreement with the plaintiff and of the trust assumed by him, conveyed the land to one W. J. Arnold, who has taken possession of the premises under his deed; that Arnold agreed to pay for the land much more than the defendant paid the Humphreys for the same, and more than the plaintiff was required to pay the defendant under their contract; and that Arnold has made certain payments upon the purchase money which he agreed to pay to the defendant, the amount of which payments is not set forth. The material allegations of the complaint are denied in the amended answer. The Court submitted to the jury two issues, as follows: 1. "Did John Humphrey and wife contract with plaintiff to sell him the land as alleged in the complaint?" 2. "Did the defendant, knowing that Humphrey and wife had contracted to sell the land to the plaintiff, and before contracting with Humphrey for the purchase of the land (428) and before receiving a deed therefor agree with the plaintiff to buy the land for him, as alleged in the complaint?"
As the case turns upon the question whether there was any proof of the trust, it is necessary to state the evidence. The plaintiff, in his own behalf, testified: "I live three miles from Cove Creek and know the defendant and John Humphrey. John Humphrey lives ten miles from me. I made a contract with Humphrey about August, 1901. I met him here and asked him what he would take for the land referred to in the complaint, and he said he would take five hundred dollars. I *Page 312 
told him I did not have that much money, but if I could get some one to take hold of it and help me out I would take the place and he could consider the place sold. The next day I saw the defendant and told him what I had done, and asked him if he would let me have the money to buy. He asked me what I would give him to get it for me. I told him I would give him one hundred dollars in addition to five hundred dollars payable in three years at six per cent. He said he would get it for me, and said `you need not bother about it any further.' Then he called Wallace's attention (Wallace was his clerk and bookkeeper) and told him to write to Humphrey that he wanted to see him about the land when he came to town. He told me to go and look at the land. I looked at the land and reported to the defendant. I told him the land was run down to some extent but it was a good investment. I wrote Humphrey a letter; about a year later I inquired of Humphrey about the letter; he said he did not remember receiving it but got a postal card later. I notified him that he could sell the place to Stewart. I wrote Humphrey a letter telling him he could sell to Stewart. (Defendant objected to all evidence of the contents of the letter, objection sustained. Plaintiff excepted). I received a letter from Humphrey which is lost. I can not find it. I (429) have made a diligent search for it. I usually keep my papers in a trunk, as I am a farmer and do not keep many papers. I have looked through the trunk, looked through all my clothes and looked through my house and everywhere it could possibly be. I am sure it has been destroyed. Humphrey said in his letter (it might have been a card) that he wanted me to hurry the matter up, as he wished to complete the deal by a certain time in October — I do not remember the day. I came to New Bern a few days after that and the defendant was away, and I asked Wallace to call his attention to the land trade. I did not see the defendant any more until after he had bought the land. He bought it in October for five hundred dollars from Humphrey and his wife. After the defendant returned and had bought the place I had a conversation with him. I went into his office and asked him about the place and he told me that he had bought it. We talked a considerable time about it. I asked him about complying with our agreement about it. and about making our trade. I told him I would give him what I had promised him — six hundred dollars at six per cent interest. Then he said to me: `I can get a heap more than that for it; I can not sell it for that.' I asked him if he was going to fly from our agreement. Then he said: `You know I can't afford to sell it for that money when I can get a good deal more *Page 313 
for it.' This is about the end of our conversation. The defendant refused to convey the land to me, but conveyed it to Arnold, who is in possession.
The plaintiff offered paragraph three of the complaint, filed 5 February, 1903, together with paragraph three of the answer thereto, filed 25 April, 1903. The defendant objected for that the Court had allowed the defendant to amend his answer as filed 4 May, 1904. The Court refused to allow the evidence unless the plaintiff would also offer therewith paragraph three of the amended answer; to this the plaintiff excepted. Here the plaintiff rested. The defendant moved to dismiss (430) and for judgment as in case of nonsuit under the act of 1897 and amendments thereto. Motion sustained. Plaintiff excepted and appealed.
This case was before us at the last term and is reported in 134 N.C. 287. We then ordered a new trial upon the ground of the admission of incompetent testimony, but at the same time it was distinctly intimated that there was evidence to sustain a finding for the plaintiff upon the issues in the case. Upon proof substantially the same as that at the former hearing the plaintiff was non-suited at the last trial. Whether this action of the Court proceded upon the assumption that there was no evidence of the trust, or that the evidence was not clear, strong and convincing, or that there was no evidence of any fact dehors
the deed inconsistent with the idea of an absolute purchase by Stewart, we we know not. If either of the last two propositions was the one upon which the decision rested, there was clearly error in the ruling. It is not for the Judge to pass upon the intensity of the proof. That is a matter which lies solely within the province of the jury. The verdict may be set aside by the Court, if found to be against the weight of the evidence, but the right of the plaintiff to have it submitted to the jury can not be denied or abridged, provided there is some evidence tending to establish the plaintiff's contention. The jury should be instructed, to be sure, that the evidence must be clear and satisfactory in cases to which that principle applies, but it is for them to say whether the evidence is of that convincing character. Berry v. Hall, 105 N.C. 154; Lehew v. Hewett,130 N.C. 22. The Judge is positively forbidden by our (431) statute "to give an opinion whether a fact is fully or sufficiently proved, such matter being the true office and *Page 314 
province of the jury." The Code, sec. 413. He must not decide upon the weight of the evidence, as he is not a trier of facts but an expounder of the law. We doubt if the rule of the Court of Equity as to the intensity of the proof, which was adopted by the chancellors for their own guidance when they passed upon both the facts and the law, had been distinctly held by this Court to be applicable to cases of trusts since the ruling inShelton v. Shelton, 58 N.C. 292, until McNair v. Pope,100 N.C. 404, and Hamilton v. Buchanan, 112 N.C. 463, and finally Kelly v. McNeill, 118 N.C. 349, were decided, in the last of which cases the question was directly involved. Expressions had fallen from the judges in several cases which indicated a drift of sentiment towards the adoption of the rule, but no ruling had been made in any case, which we now recall, presenting the precise point for decision. The Court evidently intended to hold in Shelton v. Shelton, supra, and inShields v. Whitaker, 82 N.C. 516, that the rule did not apply to the proof of trusts, as the deed is in no way altered or contradicted by the trust, "which is merely an incident attached to it in equity, as affecting the conscience of the party who holds the legal title" — in that respect differing from a condition which must be added to and constitute a part of the deed because it affects the legal estate, which may be defeated by the performance of the condition, as, in the case of a mortgage, by the payment of the money. The rule as to the intensity of proof is such a just and reasonable one, and the distinction made inShelton v. Shelton appears to us to be so artificial and shadowy that we are not disposed to review and reverse the decision in Kelly v.McNeill, in which the rule, is held to apply to such cases, or to controvert what has been said in other decisions to the same effect. The deed itself, which is absolute in (432) form, raises a strong presumption against the existence of a trust, which should be overcome by a greater weight of evidence than a mere preponderance. Kelly v. Bryan, 41 N.C. at p. 286. He who must take the burden of establishing the trust cannot succeed except upon evidence which is clear and of the most persuasive character. Bispham Eq. (6 Ed.), sec. 83. The security of titles requires the adoption of the rule, while it cannot be said to impose any hardship upon him who alleges the existence of the trust, but who by his own inadvertence, if not by his negligence, has failed, when he had the opportunity, to have it plainly declared in the deed or in some written memorandum so as to be able to furnish indisputable evidence of it.
Whether it is necessary for the plaintiff in a case like this to *Page 315 
produce evidence of facts and circumstances dehors the deed inconsistent with the claim by the defendant of an absolute purchase for himself we need not decide (Shelton v. Shelton and Shields v. Whitaker, supra,), as we are of the opinion there is proof of such a "fact or circumstance dehors" the deed in this case.
In the first place the plaintiff positively alleges, in the third section of his complaint, that the defendant had agreed to buy the land from Humphrey and to hold the title in trust for the plaintiff, with the understanding and agreement that he would convey it to him when he paid the stipulated amount. This allegation of a matter which was bound to be within the defendant's personal knowledge was not met by a square denial based upon that knowledge, as it should have been, but by a denial on information and belief. This was not a sufficient answer in law, as we adjudged at last term, nor was it a denial in fact. It was, to say the least, not responsive. When a party is charged with knowledge of a fact alleged in a pleading against him he should meet the allegation with frankness and candor, and any evasion in his answer to it may be taken as in the nature of an admission, or at least as evidence, of its (433) truth The rule in equity is that if the defendant answers at all, he must answer fully all the material statements and charges of the bill and he must speak directly, without evasion, and not by way of implied denial or negative pregnant. A literal answer will not do, he is required to traverse the substance of each charge positively and with certainty. "Particular precise charges must be answered particularly, not in a general manner. When the facts are within the defendant's knowledge he must answer positively and not as to his information and belief." 1 Enc. Pl. Pr., 876. A very clear exposition of the rules of pleading in equity relating to this subject will be found at the page of the book just cited. Tested by the said rules — and they are substantially the same as those prescribed by our Code — the first answer of the defendant was not only technically insufficient, but it was competent evidence in favor of the plaintiff and against defendant, as being in the nature of a confession, and should have been admitted by the Court. The ruling by which it was excluded was therefore erroneous. The plaintiff was not required to introduce the defendant's second answer in order to avail himself of the first as evidence. We know of no law imposing such a condition. The first answer is, therefore, one fact dehors the deed tending to corroborate the plaintiff's version of the transaction. Cobb v. Edwards, 117 N.C. 252;Shields v. Whitaker, 82 N.C. at p. 522. To what *Page 316 
extent it actually supports it, is a question solely for the jury to determine.
In the second place, the answer of the defendant to the plaintiff's inquiry about complying with their agreement, as stated by the plaintiff, was a tacit admission of the agreement, for while he refused to convey at the price named by the plaintiff as the one agreed upon, he did not deny the agreement, and again, when asked if he intended to "fly from the agreement," (434) he replied: "You know I cannot afford to sell it for that money when I can get a good deal more for it." If there was not any agreement with the plaintiff to hold the title in trust for him, that was the time to deny it explicitly. But he did not do so. Can it be said that this is not a fact or circumstance dehors the deed sufficient to be considered by the jury? Is not a virtual admission, either in a formal pleading or in pais, just as strong corroboration for the purpose of testing its sufficiency as a fact dehors the deed, as the possession of the premises by the alleged cestui que trust, or as any other fact which has been adjudged to come within the rule? We think it is. Cobbv. Edwards, 117 N.C. at p. 250.
Having disposed of these preliminary matters, it remains for us to decide, as we clearly intended to do before, whether the plaintiff has offered evidence of a parol trust or any kind of trust which he can successfully invoke the aid of the Court to enforce. It is our opinion that he has done so, and that the evidence should be submitted to the jury if it is substantially the same at the next trial as it was at the last two had in the Court below.
A mere parol agreement to convey land to another raises no trust in the latter's favor and comes within the provisions of the statute of frauds.Campbell v. Campbell, 55 N.C. 364. Our case is not of that kind. There are other elements present which are of an equitable character and affect the conscience of the defendant. An express trust arises by agreement of the parties, but whether a trust so created is within the statute is a question not necessary to be decided, as upon the evidence in this case, if the jury find the facts in accordance therewith, a trust was raised by operation or construction of law. Owensv. Williams, 130 N.C. at p. 168. Implied trusts may arise either for the purpose of carrying out the presumed intention of the parties, or they may be entirely independent of or (435) even contrary to such intention. Trusts of the first division are called resulting or presumptive trusts, as they result by operation or presumption of law and are of several classes: 1. Where a purchaser pays the purchase money but *Page 317 
takes the title in the name of another; 2. Where a trustee or other fiduciary buys the property in his own name but with trust funds; 3. Where the trusts of a conveyance are not declared, or are only partially declared, or fail; and 4. Where a conveyance is made without any consideration and it appears from circumstances that the grantee was not intended to take beneficially. Bispham Pr. of Eq. (6 Ed.), sec. 79. Trusts of the second class exist purely by construction of law, without reference to any actual or supposed intention to create a trust, for the purpose of asserting rights of parties or of frustrating fraud, and are therefore termed constructive trusts. More accurately considered, constructive trusts have no element of fraud in them, but the Court merely uses the machinery of a trust for the purpose of affording redress in cases of fraud and of working out the equity of the complainant. The party guilty of the fraud is said in such cases to be a trustee ex maleficio and will be decreed to hold the legal title for the use and benefit of the injured party and to convey the same when necessary for his protection, as when one has acquired the legal title to property by unfair means. The jurisdiction is exercised distinctly upon the ground of the fraud practiced by the party against whom relief is prayed. Bispham, supra, pp. 125, 126, 143; Wood v.Cherry, 73 N.C. 110. Such trusts are of course not affected by the statute of frauds. Gorrell v. Alspaugh, 120 N.C. 362. Where one party has by his promise to buy, hold or dispose of real property for the benefit of another induced action or forbearance by reliance upon such promise, it would be a fraud that the promise should not be enforced. Bispham, supra, sec. 218. The principle in its direct application (436) to our case has been thus stated: "Where a party acquires property by conveyance or devise secured to himself under assurances that he will transfer the property to, or hold and appropriate it for, the use and benefit of another, a trust for the benefit of such other person is charged upon the property, not by reason merely of the oral promise, but because of the fact that by means of said promise he had induced the transfer of the property to himself." Glass v. Hulbert, 102 Mass. 39, 2 Am. Rep., 418. See also, Brown v. Lynch, 1 Paige, 147; Thynn v. Thynn, 1 Vern., 296; Oldham v.Litchfield, 2 Vern., 506; Devinish v. Barnes, Pre. Ch., 3; 1 Story Eq., sec. 768. Where one person agrees before a sale to buy the property proposed to be sold for the use and benefit of another, although the former may advance all of the purchase money, it has been held that such a transaction is equivalent to a loan of the money and a taking of the title as security for its repayment, *Page 318 
even if there is no suppression of bidding or other equitable element, and the purchaser who has thus acquired the legal title will not be permitted to hold it and repudiate his promise. "It is not now an open question that when a party agrees before the sale to purchase property about to be sold under an execution against a party and to give such party the benefit of the purchase the agreement is binding and will be enforced. The defendant, upon the faith of such an agreement, may have ceased his efforts to raise the money for the purpose of paying off the execution and thus preventing a sale of his property. It will not do to say that the party promising was moved merely by friendly or benevolent considerations, and may therefore at his option decline a compliance with his agreement. Such considerations constitute the foundation of almost every trust, and the trustee should be held to account as nearly as possible in the same spirit in which he originally contracted." Sandfoss
(437) v. Jones, 35 Cal. 481; Soggins v. Heard, 31 Miss. 428; Owens v. Williams, supra. See also, McBarney v. Wellman, 42 Barb., 390. If the legal title is obtained by reason of a promise to hold it for another, and the latter, confiding in the purchaser and relying on his promise, is prevented from taking such action in his own behalf as would have secured the benefit of the property to himself, and the promise is made at or before the legal title passes to the nominal purchaser, it would be against equity and good conscience for the latter, under the circumstances, to refuse to perform his solemn agreement and to commit so palpable a breach of faith. It would be strange indeed if such conduct is beyond the reach of a court of equity, and if the party who has been grossly deceived and injured by it is without a remedy. The fact that the defendant in this case paid the purchase price out of his own money should not alter the case to the prejudice of his victim. It but aggravates his offense against sound morality, as he not only repudiates his promise but takes advantage of the impecuniosity of the plaintiff to gain an advantage over the latter. He not only deceived him, but mocked at his poverty and his discomfiture by raising the price. A mere breach of a moral obligation is not of itself, we admit, sufficient ground for the intereference of the Court; but the evidence, if taken as true, shows that there was more than that in this instance, and that the defendant has acquired property which he would not have obtained but for the plaintiff's request that he furnish the money and take the title and his promise to do so. Besides, the plaintiff alleges that Humphrey had contracted to convey the title to him and that the defendant knew it before the time of the conveyance to him. The *Page 319 
plaintiff's equity seems to us to be plain. Brown v. Lynch, 1 Paige Ch., at pp. 152-154, and cases cited: Jenkins v. Eldredge, 3 Story 181; Dodge v. Wellman, 43 How. Pr., 430; Young v. Peachey, 2 Atkyns, 254; Davis v. Hopkins,15 Ill. 519; Ryan v. Dox, 34 N.Y. 307, 90 Am. Dec., 696; (438)Cipperly v. Cipperly, 4 Thomp. (N. Y.), 342; Carr v.Carr, 52 N.Y. 251; Doruff v. Hudson, 138 Ind. 280; Devinishv. Bains, Pr. Ch., 3; S. c., 24 Eng. Rep. (Reprint), 2. The clear result of the decisions in the other States may be summed up in the terse and emphatic statement of the law by Agnew, J., for the Court in Sechrist'sAppeal, 66 Pa. St., 237: "Although no one can be compelled to part with his own title by force of a mere verbal bargain, yet when he procures a title from another which he could not have obtained except by a confidence reposed in him the case is different. There, if he abuse the confidence so reposed, he is converted into a trustee ex maleficio. The statute which was intended to prevent frauds turns against him as the perpetrator of a fraud. It is not, therefore, the fact that the bargain by which he was enabled to obtain the title is verbal which governs the case, but the fact that he procured the title to be made to him in confidence, the breach of which is fraudulent and in bad faith." Substantially to the same effect is the language of the Court in Carr v. Carr, 52 N.Y., at p. 260. Referring to the statute of frauds the Court in the case last cited says: "It bars no other equity, and precludes no one from asserting title against one who has thus taken a conveyance for a lawful and specific purpose, and attempts to retain the property in violation of the arrangement and agreement under which he has acquired the formal title in fraud of the real owner and against equity and good conscience." Manifestly such is the case now before us for adjudication, upon the judgment nonsuiting the plaintiff.
We have thus far cited and commented upon cases in other jurisdictions, as we found them more like the case at bar in all its essential features than any case decided by this Court. But we are not without expressions from this Court as to the law upon the same subject in cases so nearly analogous as to constitute those cases precedents for our (439) guidance. In Mulholland v. York, 82 N.C. 513, SMITH, C. J., speaking for the Court, and referring to the case of an attorney who bought land at public sale with his own money upon a promise to hold the title for his client and to convey it to him upon repayment of the amount advanced, says: "In our opinion a trust may be thus formed, and it will be enforced on the ground of fraud in the purchaser in obtaining the property of *Page 320 
another under a promise to allow him to redeem and attempting afterwards to appropriate it to his own use. The principle is illustrated in several cases in our own reports, which will be briefly adverted to." He then refers to the language of GASTON, J., in Turner v. King, 37 N.C. 132, 38 Am. Dec., 679, which is as follows: "The attempt of the defendant to set up an irredeemable title after the agreement he entered into, is such a fraud as this Court will relieve against." After referring toVannoy v. Martin, 41 N.C. 169, and Vestal v. Sloan, 76 N.C. 127, which appear to us as authorities strongly supporting the views we have already stated, SMITH, C. J., proceeds: "These adjudications proceed upon the assumption that the debtor, trusting to the good faith of the party promising and lulled into a false security, may have desisted in consequence of the assurance from making other efforts to prevent the sale and sacrifice of his property, and it would be a fraud in the purchaser to take advantage of the confidence and hold it, thus acquired, for his own use and to the injury of the owner." In Barnard v. Hawks,111 N.C. 338, SHEPHERD, C. J., who we know had a clear conception of the law of trusts and who always enlightened us when he wrote upon the subject, states the doctrine thus: "Even had this been land, and the defendants had paid the purchase money and taken the title under a parol agreement to hold it for the plaintiff, subject to his right to repay the purchase money, the Court upon sufficient testimony would have declared (440) them trustees. This was substantially decided in Cohn v. Chapman 62 N.C. 92, 93 Am. Dec., 600, in which it was held, upon the principle of trust, that such an agreement was not within the statute of frauds." In Cohn v. Chapman, 62 N.C. 92, cited inBarnhardt v. Hawks, supra, the Court seems to put the very kind of case we are now deciding when it says: "A parol agreement between A and B that A will purchase land for B and take the title to himself, and hold it for B until the latter can pay for it, and, when paid for, will convey it to him, is such an agreement as equity will enforce. And such substantially is the agreement in this case." PEARSON, C. J., for the Court in Hargrave v. King,40 N.C. 436, says: "When one by parol agrees to procure a lease for himself and others and does procure the lease in his own name, he is a trustee for those for whom he agreed to act, and the statutes referred to have no application." But more to the point than any other expression in the cases is the language of SMITH, C. J., speaking for the Court in Cheekv. Watson, 85 N.C. at p. 198: "Our conclusion upon the whole testimony is that the defendant has deceived an embarrassed man into an assent to the sale of *Page 321 
his land to the defendant, through the trustee, by taking advantage of his distress and exciting false hopes that the sale should not be pleaded as absolute, but that the land might be redeemed within a reasonable time. The trust would equally arise where the party relying upon the assurance is prevented from making arrangements with others by which he could have secured the same benefits promised by the purchaser." The last part of this quotation is especially applicable to our case. If the plaintiff had known that the defendant intended to betray him by a false promise, and thus to deceive him into the adoption of a course of action which otherwise he would not have taken, he would not have placed any trust in the defendant but would have arranged with some other and more reliable person in order to secure the same benefit. To permit the (441) defendant to profit by such a betrayal of confidence so implicitly reposed in him, would be not only inequitable but a reproach to the administration of justice. Johnson v. Hauser, 88 N.C. 388; Shields v.Whitaker, 82 N.C. 516; Thompson v. Newlin, 38 N.C. 338, 42 Am. Dec., 169; Cook v. Redman, 37 N.C. at p. 25; Cobb v. Edwards,117 N.C. 244; Williams v. Avery,131 N.C. 188.
We held in Sykes v. Boone, 132 N.C. 199, 95 Am. St., 619, that a trust declared, at the time the legal title passed, to the effect that the vendee should hold in trust for a third person and convey to her on receiving the amount of the purchase money paid by him, was not within the statute of frauds, and that the agreement of the vendee so to hold the land and upon the faith of which he acquired the legal title was valid and enforcible as a trust. We are unable to distinguish this case from Sykes v. Boone, and while the two cases are not precisely alike they are in principle the same. In Cousins v. Wall 56 N.C. at p. 45, it appeared that the defendant advanced his own money and took a title to the lot in question, upon a promise made to the plaintiff that he would convey to him whenever he should repay the purchase money with the interest accrued thereon, and this Court held that upon the facts thus established by the proof a parol trust was raised in favor of the plaintiff and would be enforced by compelling the defendant to keep his promise and convey the land according to his agreement. "By paying his money," says the Court by BATTLE, J., "and taking the legal title to himself, the defendant held the legal estate in trust to secure the repayment of the purchase money, and then in trust for the plaintiff. The defendant never contracted to sell or convey the land or any interest therein to the plaintiff; for at the time of the agreement he had no title or interest *Page 322 
(442) in the land, and it was only by force of the agreement that he was permitted to take the legal title, and by the same act he took it in trust for the plaintiff. It is manifest that the statute of frauds does not apply." To the same effect is Cloninger v. Summit, 55 N.C. 513.
The mere non-performance of a beneficial parol agreement is not such fraud or bad faith as will induce a court of equity to compel performance. There must be a salutary and proper limitation of the doctrine of parol trusts, and it will be found, we think, in confining the equity to enforce trusts arising out of parol agreements to transactions involving some element of fraud or of bad faith apart from the mere breach of the agreement itself, which makes it inequitable that the vendee should hold the legal title absolutely or discharged of any trust. In this case, it is apparent that the defendant would never have acquired the legal title to the land if the plaintiff had not requested him to advance the money and take the title in trust for him, and if he had not solemnly promised to do so. If he had declined, the plaintiff no doubt would have made other arrangements to secure the title for himself.
We think the case is well within the limit of the doctrine of trusts as we have found that limit to be fixed by the law. The fact that the plaintiff agreed to pay one hundred dollars to the defendant in addition to the purchase price cannot affect his equity. Owens v. Williams, supra.
The issues refer to the contract as having been made with Humphrey and wife. When this Court suggested that the second issue be submitted, we were misled by the form of the first issue into assuming that the wife had some interest in the land other than her dower; but it appears that she did not have any such interest. We do not think it can make any difference whether Humphrey's wife joined in making the contract or not. If he made it, and afterwards he and his wife conveyed (443) the land to the defendant, that will be quite sufficient to bind the defendant, provided the other facts necessary to raise the trust in favor of the plaintiff are shown. There was error in the ruling of the Court by which the action was dismissed. The judgment will be set aside and a new trial awarded.
Error.
Cited: Lehew v. Hewett, 138 N.C. 10; Millhiser v. Leatherwood140 N.C. 235; Davis v. Kerr, 141 N.C. 17, 18, 19; Faust v. Faust,144 N.C. 386; Streator v. Streator, 145 N.C. 338; Russell v. Wade,146 N.C. 121; Chappell v. White, Ib., 573; Gaylord v. Gaylord,150 N.C. 227, 237; Harrell v. Hagan, Ib., 244; Jackson v. Farmer,151 N.C. 281; Busbee v. Land Co., Ib., 514. *Page 323