WM. C. WOOD, Ex'r of EDWARD WOOD, and CAROLINE WOOD
    *v.* ELIZABETH CHERRY, widow, &c,

A Trust can only be created in one of four modes, to wit :
    (1.) By transmutation of the legal estate, when a simple declaration
will raise the use or trust.
    (2.) A contract based upon *valuable* consideration, to stand seized
to the use, or in trust for another.
    (3.) A covenant to stand seized to the use of or in trust for another
upon *good* consideration.
    (4.) When the Court by its decree converts a party into a trustee,
on the ground of fraud.
No conveyance or act done after the execution of a will, unless it
    amounts to a revocation, will affect its provisions.

This was a CIVIL ACTION to recover possession of real estate,
tried before his Honor Judge *Eure* and a jury, at the Spring
Term, 1875, of the Superior Court of CHOWAN county.

The facts relating to the points decided in this Court are
substantially the following :

In April, 1863, James C. Johnston, of Chowan county,
made and published his last will and testament, by which he
devised and bequeathed to Edward Wood, the testator of the
plaintiffs, all his real and personal estate in the county of Cho-
wan, subject to certain trusts and conditions contained in a
private letter of the same date and filed with his said will.

Before making his will, the testator executed to one G. J.
Cherry, afterwards the husband of the defendant, a lease of
the following tenor, which was proved and registered.

Hays', 12th March, 1863.

Know all men by these presents: That whereas, Mr. G. J.
Cherry has expended much time and labor in setting out a
peach orchard and grapery, and has not as yet reaped any
profit therefrom, on a place belonging to me, called Collins'
Point: Now, therefore, to remunerate said Cherry, I, James
C. Johnston, have leased, and by these presents do lease, to

said G. J. Cherry all that tract of land, with improvements thereon, called Collins Point, and which I bought from Alexander Cheshire, he paying me rent for the same according to the profits of said farm and improvements, or just as much as he may find it convenient to spare, and after my death to have it rent free, or as much as he may find it convenient to pay, provided, always, that the said Cherry shall not sell or transfer his life estate in this land, and that it shall not at any time be subject and liable to his creditors for any debts he may owe them.

In witness whereof I have hereunto set my hand and seal the day and year above written.

JA. C. JOHNSTON, [SEAL.]

A short time before the death of Mr. Johnston, the testator, he addressed to the said lessee, G. J. Cherry, the following letter, written by Edward Wood, his executor, and signed by himself.

HAYES, March 20th, 1865.

*G. J. Cherry, Esq. :*

MY DEAR SIR : I address you this note to say to you that it is my desire that after my death you shall continue to occupy your present residence at my Point plantation, retaining possession of the negroes now on the farm, named Jacob, George and Maggy, during your natural life, fulfilling with my executor in Chowan county the same conditions and terms of rent as agreed upon and understood between you and myself heretofore. I further desire that should you leave a wife at your death, she shall retain possession of said place during her widowhood and occupancy of it upon the same terms.

Very truly,<br>Your friend,<br>JA. C. JOHNSTON.

The foregoing lease and letter are relied on by the defendant, the widow of the lessee, to sustain her claim to the premises, which she has occupied ever since the death of her husband in 1870. The defendant is still a widow.

Edward Wood, the executor of James C. Johnston, died in 1872, having devised the lands in controversy to his executor until 1878, and then over to the other plaintiff. Under this will the plaintiff claims.,

Upon the trial of the cause in the Court below, the jury, under the instructions of his Honor, found a verdict for the defendant. Judgment accordingly, and appeal by the plaintifis.

*Gilliam & Pruden*, for the appellants, insisted :

(1.) That no trust can be raised in respect to lands devised, after the execution of the will, except by a writing sufficient in form to revoke the will.

(2.) That no parol understanding or agreement is sufficient, upon which to found a trust in respect to lands devised, after the execution of the will.

(3.) No trust arises as to Mr. Johnston, because no agreement in writing was executed by him, with such formalities as are required by law; the paper offered being in the handwriting of another, unattested and in possession of a third person at Mr. Johnston's death.

(4.) The letter to the lessee, Cherry, was not referred to, nor contemplated by the testator, at the writing of his will.

*J. A. Moore*, with whom was *A. M. Moore* and *Mullen*, filed the following brief :

The lands in question, conveyed in the will of J. C. Johnston, deceased, were held by the devisee Wood in trust for Cherry. Leaving out of consideration the fact that the devisee, Edward Wood, promised the testator to carry out his intentions, (and the express trust which we hold was created for defendant,) according to the rules of construction from the will itself and the letter, an implied trust was created.

1st. Where words " precatory," " recommendatory " or " expressing a belief" are used by a testator, an implied trust arises. Lewin on Trusts and Trustees, 168 ; Willis on Trustees, 54, 55, *et seq.* Note herewith the will of Mr. Johnston : " To him, the said Wood, his heirs and assigns," &c., " subject to such *disposition* " and " *instruction*," " *trusting* entirely to his honor and integrity," &c. Phillips' Law, page 252. " But only entirely on the integrity, fidelity and moral sense." *Ibid*, page 255.

2d. The releasing his executors by the testator from all legal liability in the will, wos intended by the testator to apply only to the provisions made or intimated in the will and letter as made, for the benefit of testator's *next of kin.* The tenor of the will is to *deter them* from opposing its validity, and the *purpose* of it was to bequeath his property to parties to whom he was attached and whom he considered proper to manage his estate, and who had not deserted him. The language there had no application to any provision made for Cherry or his intended wife. The purpose of the *lease* was intended to be more fully carried out, as evidenced by the *letter* and the fact that the testator knew of the intended marriage of Cherry and promoted it.

3rd. If there had been an agreement between the Devisee and Testator to execute an unlawful trust, the beneficial interest would result to the heir at law.

But when the devise is a beneficial one upon the face of it and the testator communicates his will to the devisee and requests him to be a trustee for such purpose as he will declare and he *fails* to declare. the devisee will not be allowed to hold. Apply then to this case—Lewin on trusts, 74, Ibid 77. *Smith* v. *Attersoll,* " a devise to Joseph and John, his sons, and executors in trust for certain purposes, " which had been fully stated to them." Note language there and in will of J. C. Johnston, Phillips law page 526, " I have high respect to carry out my wishes " or

4th. The Statute of Frauds exempts from the provisions "Implied Trusts." Willis on Trustees, 55 and 56.

"They arise from the manifest intention of the parties." (Sanders on Uses and Trusts,) "or the nature of the transaction where there is *no written evidence* of the trust."

5th. Plaintiffs say that because the letter is not contemporaneous with *date* of the will, the trust on reality cannot arise. This was the law, when devises of realty took effect from the *date* of the will. Trusts as to *personalty* before the statute were different, and now bequests of realty being the same as to time as those of *personalty*, the law applicable to trusts on personalty, is the same as to realty. The will now is ambulatory and takes effect from the time immediately preceding the death of the testator.

Reference by Johnston in his letter to "the lease and the terms contained in it," is a renewal of the lease and the letter is signed to meet the Statute of Frauds. 2. Parsons on Contracts, 503, 511. 3. Parsons on Contracts, 6 and 7, and notes.

The consideration in the lease was sufficient to support a bill for specific performance. So, if the reference to it in the letter is a renewal of the lease, the defendant stands in as good a position, as she would, had a decree for specific performance been made.

The Statute of Frauds is not in force in this State. *Shelton* v. *Shelton*, 5 Jones, Eq. 293. *Shelton* v. *Shelton*, 6 Jones, Eq. 119. *Fergerson* v. *Hoas*, 64 N. C., 772, and other cases therein cited.

But in our case an express trust was created by the testator and accepted by the devisee Wood.

The trust was observed by Wood, and the condition of rental complied with by the beneficiary. The case shows that immediately preceding the death of the testator, Wood and he had full conversation on the matter, and Wood promised to carry out his intentions. The Court will not permit the manifest

intention of Mr. Johnston and the agreement between him and the devisee Wood, to be violated.

Pearson, C. J. According to *justice,* using the word in its broadest sense, as distinguished from law or equity, the defendant ought not to be disturbed in her occupation of the premises during her lifetime or widowhood, and we have considered the case in every point of view to see if we could sustain the decision of his Honor in her favor. But we can find no ground on which to do so.

I. The *promise* of Wood cannot be enforced on the ground of its creating a trust, for a trust can only be created in one of four modes.

1. By *transmission of the legal estate* when a simple declaration will raise the use or trust.

2. A contract, based upon *valuable consideration,* to stand seized to the use or in trust for another.

3. A covenant to stand seized to the use of or in trust for another upon *good consideration.*

4. When the Court, by its decree *converts a party into a trustee,* on the ground of fraud.

If we can sustain the defendant, it must be upon this point, that is to say the *fraud* in writing the title, (referred to in the pleadings) at the dictation of the testator and the *promise* to carry out his wishes in respect thereto, as understood between them ; whereas the present action runs counter to the letter and violates the promise.

This is met by the fact that the will had been executed several years before, and an implied trust is expressly excluded by statute. Bat. Rev., ch. 119, sec. 44. "No conveyance or act done *after the execution of a will,* shall affect its provisions, except it is so executed as to amount to a revocation." The letter and the promise are both excluded by the words of this statute.

The suggestion that the time of the execution of a will is the time it takes effect, to-wit, the death of the testator, calls

for no remark, but it is all that the idea of a trust can rest on, so that ground fails.

II. The lease to Cherry, intended by "the letter" so as to give defendant a life estate, is an executory contract which the plaintiffs will be decreed specifically to perform. The difficulty here is to determine from the lease (as it is called) and the letter, what was this executory contract, or if it will make it any stronger, "lease under which the husband of defendant entered and held possession for many years.

It is clear that, by its proper construction, the husband of defendant was by virtue of the lease to have the right to occupy the premises during his lifetime, and by "the letter" this privilege of occupancy was extended to the defendant during her life or widowhood ; but the question is, what was the consideration of "this grant to occupy;" and how can the Court carry it into effect as an executory contract and decree what is to be done on the one side, and what is to be done on the other side, incidents necessary in every decree for specific performance, supposing her to be sufficiently connected with this lease or executory contract, so as to be able to make title under it, by means of "the letter," mentioned in the pleadings. How can this Court declare what she is to do in consideration of the *privilege* of being allowed to *occupy* the *premises* as Ja. C. Johnston, the testator, looked at it, or consideration of the *rent* of the premises, as the defendant now looks at it. The paper executed by J. C. Johnston grants a life estate to Cherry, "he paying me rent for the same according to the profits of said farm, improvements, or *just as much as he may find it convenient to spare,* and after my death to have it rent free, or as much as he may find it convenient to spare, provided said Cherry shall have no right to transfer his interest, nor shall it be sold for his debts.

This instrument is too vague and uncertain to make it practicable to decree its specific performance. Indeed, it seems to have been intended merely as evidence of Mr. Johnston's *bounty* or charity towards one who seems to have been depen-

dent upon him, and it is the misfortune of the defendant that it was not done in such a manner as to give it legal effect.

Our conclusion is, that the lease and the letter and the promise confer upon the defendant no rights which can be recognized either in a court of law or of equity.

Error. Judgment reversed.

This will be certified.

Per Curiam.                                        Judgment reversed.