L. N. RUSSELL v. O. M. WADE.

(Filed 20 November, 1907).

1. **Deeds and Conveyances—Options—Fraud—Parties—Title in His Own Name—Uses and Trusts—Trusts and Trustees—Specific Performance.**

Action to declare defendant a trustee, and not to enforce specific performance of a parol contract, is one wherein plaintiff alleges that he and defendant had agreed, upon a consideration, to acquire together an option on a certain tract of land; that, pursuant to the agreement, the defendant secured the option, but, in fraud of plaintiff's rights, had it made to himself alone, and, also in fraud of the plaintiff's rights, secured to himself the land under the option, and conveyed an undivided one-half interest therein to a third person, when the relief asked is that defendant be decreed to convey the one-half undivided interest in the land remaining in defendant's name.

2. Same—Options—Fraud—Parties—Evidence.

When defendant, under an agreement with plaintiff, secured an option on lands, taking it in his own (defendant's) name, and afterwards acquired an extension of the option, again in his own name, acknowledged orally that the option should have been taken in both of their names, and offered to give plaintiff a writing to that effect, the evidence as to the writing is corroborative of the original agreement, and, when so restricted by the trial Judge, is competent in an action to declare the defendant a trustee for the plaintiff in the land acquired under the option of defendant in fraud of plaintiff's rights.

3. Same—Option—Fraud—Parties—Uses and Trusts—Trusts and Trustees—Ex Maleficio.

When defendant, willfully violating his agreement with the plaintiff to secure an option on a tract of land for them both jointly, by taking it in his own name, assured the plaintiff that the land taken under the option was to be held by him under the agreement, and, while each party was endeavoring to raise money to secure the land under the option, the defendant represented to plaintiff that he could borrow the money for them both, to which plaintiff agreed, equity will create and enforce a constructive trust upon the land in plaintiff's favor when defendant secured title to the land in his own name, and conveyed an undivided half interest therein to the one from whom he borrowed the money, and secured the loan by a mortgage upon the other like interest. In such cases the Court, to prevent fraud, will declare defendant a trustee *ex maleficio.*

CIVIL ACTION, tried before *Moore, J.,* and a jury, at April Term, 1907, of the Superior Court of MONTGOMERY County.

Plaintiff alleges that he and defendant, some time during the month of April, 1902, entered into an agreement to procure an option on and, some time later, to purchase a tract of land containing about 2,500 acres, fully described in the complaint, which was owned by Miss Adelaide Kron; that plaintiff and defendant were each to have one-half undivided interest; that they were to sell the land and divide the profits equally. Defendant agreed that, if plaintiff would negotiate the trade for the option, he (defendant) would advance the money necessary to pay therefor; that, pursuant to said agreement, plaintiff did negotiate with the owner of the land for an option; that he sent defendant to Miss Kron to get the

option and to pay the amount of cash agreed upon; that defendant wrongfully, in violation of the contract and without knowledge of plaintiff, had said option executed to himself, omitting the name of plaintiff therefrom. When plaintiff first had knowledge thereof, defendant promised to give him a writing showing that he (plaintiff) owned one-half interest in said option, but failed to do so; that about the time said option was to expire the parties made arrangements with Miss Kron for a new or extended option; that said second option was also taken by defendant to himself, but he promised to give plaintiff a writing showing his interest therein; that plaintiff negotiated with one or more persons to sell the option at a large profit, but was induced by defendant to let him borrow some money from O. R. Cox, the father-in-law of defendant, to pay for said land; that defendant got the money from Cox and had Miss Kron to make a deed to himself for said land, again promising plaintiff to make him a writing showing his (plaintiff's) interest therein; that, without plaintiff's knowledge, and in fraud of his rights, defendant conveyed one-half interest in said land to said O. R. Cox, and executed a mortgage to him for the other one-half undivided interest, to secure a note of $2,400, being the amount of one-half the purchase money paid to Miss Kron, with interest; that the land is very valuable, being worth more than $10,000; that he is ready and able to pay one-half the purchase money and redeem the one-half interest covered by the mortgage to Cox, etc.

Plaintiff alleges that, by virtue of the facts set forth, he is the equitable owner of a one-half undivided interest in said land, and demands appropriate relief in the premises, etc.

Defendant denies the material allegations in the complaint and states his version of the transactions. It is unnecessary to set forth more fully defendant's contentions.

His Honor submitted the following issue to the jury: "Is the plaintiff the equitable owner of a one-half undivided interest in the lands described in the complaint, subject to the

mortgage deed executed by O. M. Wade and wife to O. R. Cox for one-half the purchase money thereof ?"   The defendant excepted to the issue submitted to the jury.

Both parties introduced testimony tending to sustain their contentions.   At the close of the evidence defendant moved for judgment as of *nonsuit.*   Motion denied, and defendant duly excepted.

The Court charged the jury fully upon the different contentions of the respective parties, and, among other things, explained to the jury and charged them that, where evidence had been admitted in the cause for a limited purpose, they could consider said evidence only for the purpose for which it was admitted, and pointed out to the jury in each instance, as set forth in the foregoing evidence, for what purpose the evidence was admitted, and explained to them the purpose for which they could consider the evidence in each instance.   The Court also made this explanation to the jury in each instance at the time the evidence was admitted.   Among other things, the Court charged the jury that, if the plaintiff believed that he had arrangements made to secure his part of the purchase money of the land in controversy, and informed the defendant that he had such arrangements made, and that the defendant thereupon told him that he had arranged to secure the whole of the purchase money from his father-in-law for the benefit of both plaintiff and defendant, and thereby induced the plaintiff to refrain from any further effort to secure his part of the purchase money, it made no difference whether the plaintiff could have secured his part of the money or not.

To the foregoing paragraph of the charge the defendant excepted.

The jury answered the issue submitted to them in favor of the plaintiff.   Motion for a new trial; motion overruled, and the defendant excepted.   There was judgment upon the verdict, to which the defendant excepted and appealed.

*U. L. Spence, J. A. Spence* and *R. T. Poole* for plaintiff.
*Adams, Jerome & Armfield* for defendant.

CONNOR, J., after stating the case: The issues tendered by defendant were properly rejected. They are based upon a misconception of plaintiff's allegation. The action is not brought to enforce specific performance of a parol contract to convey land, but to declare defendant a trustee in respect to one-half undivided interest in the land described in the complaint. While there is contradictory evidence, the verdict of the jury, construed with reference to the instructions, establishes plaintiff's allegation that he and defendant entered into a contract to procure an option on the land and secure the title thereto for the purpose of selling and dividing the profit made on the transaction; that defendant took the option to himself, or in his own name, but recognized plaintiff's interest therein, and promised to give him a writing showing that he was joint owner. The conduct of both parties in negotiating sales of the property, and otherwise, strongly corroborates plaintiff's contention. There is but little difference in the testimony in this respect. Miss Kron says that when she gave the option she understood that it was for the benefit of both parties. It appears that, upon the expiration of the first option, a new one was given under substantially the same conditions as the first, so far as the interests of plaintiff and defendant were concerned. When the time came to raise the purchase money plaintiff was negotiating with several parties to get his part, and the defendant then suggested that he could borrow the whole amount "for both of us" from O. R. Cox, his father-in-law. Plaintiff, relying upon this suggestion, made no further effort to raise the money, stating that he wished his interest to stand security for his part of the debt. Defendant, instead of doing as he had proposed, obtained the money from Cox, took title to himself, and immediately conveyed one-half interest to Cox in full, and executed a mortgage to him (Cox) for the other one-half interest to secure a note of $2,400, being one-half the purchase money, thereby depriving plaintiff of any interest in the land. The value of the land

is very greatly in excess of the amount paid. The plaintiff's equitable right is based upon the well-settled principle and authorities discussed and cited by *Mr. Justice Walker* in the recently decided case of *Avery v. Stewart,* 136 N. C., 426. In that case the plaintiff had contracted for the purchase of a tract of land, and, being unable to raise the purchase money, procured the defendant to pay the amount and take title for his (plaintiff's) benefit and convey to him upon payment of the amount advanced, with a bonus agreed upon. We held the trust valid, upon the authority of a long line of cases decided in this Court. In this case plaintiff, in violation of his duty to defendant, takes the option to himself, whereas he should have taken it to the defendant and himself jointly. This was a clear breach of duty, both legal and moral, and so recognized by defendant, who promised to give plaintiff a "writing" showing his interest in the option. The promise to give the writing, made at various times after getting the option, is not the basis of plaintiff's claim, but corroborative of his evidence in regard to the original agreement. The trust arises and is attached to the legal title procured by defendant "by operation or construction of law." *Mr. Justice Walker,* in *Avery v. Stewart, supra,* after enumerating the several ways in which such trusts arise, says: "Trusts of the second class exist purely by construction of law, without reference to any actual or supposed intention to create a trust for the purpose of asserting rights of parties or of frustrating fraud, and are, therefore, termed constructive trusts. * * * The party guilty of the fraud is said in such case to be a trustee *ex maleficio,* and will be decreed to hold the legal title for the use and benefit of the injured party, and to convey the same when necessary for his protection, as when one has acquired the legal title to property by unfair means," citing *Wood v. Cherry,* 73 N. C., 110, and other cases. "When one party has, by his promise to buy, hold or dispose of real property for the benefit of another, induced action or forbearance by

reliance upon such promise, it would be a fraud that the promise should not be enforced." The following language in the opinion extracted from *Glass v. Hulbert,* 102 Mass., 2 Am. Rep., 418, is pertinent and conclusive of the plaintiff's equity: "When a party acquires property by conveyance secured to himself under assurances that he will transfer the property to or hold and appropriate it for the use and benefit of another, a trust for the benefit of such person is charged upon the property, not by reason merely of the oral promise, but because of the fact that by means of such promise he had induced the transfer of the property to himself." If the plaintiff had contracted with Miss Kron for an option to himself, and, after doing so, procured defendant to take the option upon an express promise to hold for his (plaintiff's) benefit and transfer to him, can there be any question that the Court would have enforced the promise? Can it be that there is any substantial difference when, as in this case, he having procured a promise from Miss Kron to give the option to them jointly, and pursuant to an arrangement between the parties that the option was to be so taken, defendant, in violation of his promise, takes the option to himself? Is not this a clear case of obtaining the property by unfair means? If he took the option in his own name, intending to exclude plaintiff from any interest therein, it presents a clear case in which the Court declares him a trustee *ex maleficio.*

In *Cloninger v. Summit,* 55 N. C., 513, in which the same principle is involved, *Pearson, J.,* says: "The plaintiff's equity does not rest upon the idea of the specific performance of a contract. The parties did not occupy the relation of vendor and vendee. The defendant did not agree to *sell* the land to the plaintiff, for, at the time of the arrangement, he did not have the land, or any interest therein, to sell; nor was the plaintiff to pay a price for it. But the plaintiff's equity rests upon the idea of enforcing the execution of a trust." *Hargrave v. King,* 40 N. C., 430. If, as is probable, de-

fendant took the option to himself, intending in good faith
to carry out his agreement with plaintiff, and thereafter, for
any reason, changed his purpose or decided to hold for him-
self, is the plaintiff without remedy? We think not. To
permit defendant to so deal with the property, to plaintiff's
injury, would be to encourage instead of to prevent fraud and
wrong.

It is true, as contended by defendant, "that a breach of a
mere moral obligation is not, by itself, sufficient ground for
the interference of the Court." But, as said in *Avery v.
Stewart, supra,* "The evidence, if taken as true, shows that
there was more than that in this instance, and that the de-
fendant has acquired property which he could not have ob-
tained but for the plaintiff's request that he furnish the money
and take the title, and his promise to do so.   *   *   *   The
plaintiff's equity seems to us to be plain." The difference in
the two cases consists in the fact that in one the defendant
agreed to take the title to himself for the benefit of plaintiff,
whereas in the other he was to take the option in the name
and for the benefit of both, and, in violation of his promise
and his duty, he took it to himself. In one the wrong was
in refusing to execute an express promise, upon the faith of
which defendant got the property, whereas in the other de-
fendant took title in violation of his agreement. In the first
case the Court enforces the execution of an express parol trust.
In this case the Court declares defendant a trustee to prevent
fraud *ex maleficio.* The law and the authorities have been
so recently discussed and cited in *Avery v. Stewart, supra,*
that we deem it unnecessary to repeat what was so well said
in that case. The doctrine of trusts, both parol and con-
structive, has been frequently before this Court, and the prin-
ciples so clearly stated that we prefer to adhere to our own
decisions. In several jurisdictions the statutes differ from
ours. The Court has uniformly held that parol and, of
course, constructive trusts are not within our statute of frauds.

Defendant's counsel, in his very excellent brief, stresses the principle and authorities relating to *resulting trusts,* which usually arise when the purchase money is paid by one person and the title taken by another. As we have seen, this case does not come within that class, and is not, therefore, affected by the fact that defendant furnished the money to pay for the option. The trust attached to the option, and the interest acquired by defendant by virtue thereof, and, in the absence of any action on the part of plaintiff releasing such equity, it adhered to such title as defendant acquired pursuant to the original option. The evidence tends to show, and the fact passed into the verdict, that plaintiff was at all times asserting his rights. His Honor expressly submitted the question to the jury whether he was induced to discontinue his efforts to raise the purchase money by the promise of the defendant to do so for both. If defendant intended to put an end to the relation established between himself and plaintiff by the original agreement, he should have given him clear, express and unequivocal notice thereof, and thereby let plaintiff understand that he must assert his rights or lose them. This he did not do. While there is some evidence indicating a purpose to exclude plaintiff from further participation in the transaction, the first unequivocal act done by defendant was the execution of the deed to his father-in-law. Since then we find no change in the status of the parties in respect to their rights and liabilities. The defendant lodges a number of exceptions to the admission of evidence. They are based upon the theory that they were offered to establish the plaintiff's case by acts and declarations subsequent to the execution of the first option. His Honor confined them at all times during the trial to the office of corroboration of the substantive evidence upon which the cause of action was based. The testimony was competent for this purpose. His Honor correctly refused to dismiss the action. The judgment secures to the plaintiff what was to be his by the original agreement—

that is, a one-half interest, after paying one-half the purchase money. If the defendant has lost his one-half interest by conveying it to his father-in-law in fee, he has no one to blame except himself. He had no right to give away the interest of the plaintiff, who, it seems, originated the idea and plan, which, if carried out as agreed upon, would have given each party a handsome profit on the purchase.

We have examined the record with care, and find

No Error.