This is an action to compel the execution of a parol trust. The verdict of the jury shows that the plaintiff and defendant entered into an oral agreement, on joint account, that they should buy and sell for gain certain lots situated in the city of Rocky Mount, the specific stipulation being that plaintiff should purchase and sell the lots, doing all of *Page 45 
the active business in that behalf, and the defendant should furnish the money with which to make the purchases; that the lands should be sold, defendant repaid the amount of his advances in money, and the clear profits should be divided equally between them. That plaintiff was ready, able, and willing to perform his part of the contract, and actually did do all the things required of him, and defendant refused to comply therewith on his part. By plaintiff's efforts, actually bestowed by him, they succeeded in purchasing from one J. H. Flood five lots, upon terms satisfactory to all the parties; but instead of having Flood make the title to plaintiff, or to plaintiff and defendant, so that plaintiff might resell them and realize the proceeds of the sale, and that the agreement could be executed to that extent, the defendant secretly and without plaintiff's knowledge, and with the intent to defeat his rights in the contract, caused J. H. Flood to convey the lots to him individually and thereby got control of the title. Defendant afterwards agreed orally to perform the contract, which he admitted, by a sale of the lots at plaintiff's request, but, later, refused to do so. Plaintiff had procured bidders at advantageous prices, but defendant still refused to sell to any one of them, and plaintiff, thereupon, offered to pay his fair proportion of the amount advanced by defendant, and take a conveyance for one moiety to the four remaining lots, one of the five lots having theretofore been sold to C. R. L. Matthews for $175. This proposal was rejected by defendant. That the price paid Flood for the lots was $625, a large part of (18) which defendant borrowed for the purpose, securing the repayment of it by a mortgage on said premises. That afterwards plaintiff proposed to pay defendant his part of the purchase price and take a deed for two of the lots, but this defendant declined to do, stating that he intended to hold the lots absolutely for himself and for his sole use and benefit, claiming sole and absolute ownership in spite of the plain terms of the contract, by which he agreed that the lands should be held in trust for the plaintiff and himself, as aforesaid, and not by him individually in his own right.
Plaintiff avers that defendant is a trustee for the benefit of the parties to the said agreement, holding the legal title to the land for the uses and purposes above set forth. He asks for an adjustment of the amounts due and to be paid by each of the parties, and upon payment of the sum due by him that the four lots be equally divided between them, and that deeds be executed accordingly, and for general relief.
Defendant denied the essential facts alleged by plaintiff in regard to the purchase of the lots for the joint benefit of plaintiff and himself, and averred that he bought the property for himself — by borrowing the money, it is true, and mortgaging the land to pay the purchase price, but that he made no agreement that plaintiff should have any share or *Page 46 
interest therein, nor did he conceal any part of the transaction from the plaintiff. After the property was bought by him, he agreed to pay plaintiff commissions if he sold the same for him, but before there was any sale by plaintiff, he concluded to withdraw the land from the market and build houses upon it, and this was all of their agreement. Upon an issue submitted, the jury found the facts to be as stated by plaintiff in his complaint, thereby adopting his version as above set out. The court, upon the verdict, declared that defendant held the land in trust, according to the terms of the agreement between the parties, and adjudged that it be sold and the cause retained for further orders and directions, defendant to pay the costs of the action; whereupon he appealed.
After stating the case: The main contention of the defendant is that the agreement between the parties, alleged by the plaintiff and found by the jury to be the true one, is within the terms of the statute of frauds, and not having been reduced to writing, is voidable by him. But the fallacy of the position is apparent when we consider that this is an action to enforce a trust, which is not within the statute, and not one for specific performance of a contract relating to land. The English statute includes parol trusts within its prohibition, but ours does not, and they remain here as at common law.
The transaction between these parties falls clearly within the definition of a parol trust, as settled by several decisions of this Court. If the land had been sold by the defendant, and that part of the contract performed, the plaintiff would be entitled to recover his share of the proceeds of the sale, in assumpsit, upon the theory of money received to his use, from which the law implies a promise by defendant to pay it over to him, and this without regard to the statute of frauds, as the case would not be covered by its provisions, which refer to a sale or conveyance of land and not to a division of money merely or the proceeds of the sale.Massey v. Holland, 25 N.C. 197; Michael v. Fort, 100 N.C. 178; Spraguev. Bond, 108 N.C. 382; Bourne v. Sherrill, 143 N.C. 381.
The Court held in Hess v. Fox, 10 Wendell (N. Y.), 436, that the statute did not apply to such an agreement, because, "No question can arise on the validity of the agreement to sell. That was performed, and the remaining part was to pay over money, supported by the consideration of land conveyed to the promisor." This case is cited with approval in Bournev. Sherrill, supra, and it may now be taken as settled law in this State, if not in all jurisdictions. *Page 47 
While defendant has not sold the land, so as to bring this case within the operation of the principle just stated, he has, by his agreement, charged it with a trust which equity will enforce, and the statute, fortunately for fair and honest dealing is no protection to him. (20) That he is morally bound to its performance will not be questioned, and he is also legally required to fulfill his promise. The law, upon this phase of the matter, is equally well established. We cannot doubt for a moment that the agreement was that the title to the land should be taken in the name of the plaintiff, or, at least, in the joint names of the parties, as the plaintiff was authorized to sell as well as to buy the lots, and everything necessary to carry out this purpose is implied. It surely was not intended that defendant should be able to block the execution of the agreement by taking the title to himself and refusing to convey. But even if it was the purpose that he should have it, the agreement was that he should hold it for the joint benefit of himself and the plaintiff, and upon the faith of this promise he acquired the title, and will not be permitted to hold it discharged of this obligation, but only in trust for the uses declared in the agreement. The further consideration for the promise was that the plaintiff should contribute his skill and labor in securing the property for the purposes of the joint enterprise. This he has done fully and faithfully, and equity will not disappoint his reasonable expectation that defendant would not take the benefit of this skill and labor and refuse to execute the trust and confidence reposed in him.
Plaintiff's equity is clear. The case is fully covered by Avery v.Stewart, 136 N.C. 426. Without quoting literally, the Court then held: A breach of a mere moral obligation is not, by itself, sufficient ground for the interference of the court. The evidence, if taken as true, shows that there was more than that in this instance, and that the defendant has acquired property which he could not have obtained but for the plaintiff's request that he furnish the money and take the title, and his promise to do so. The plaintiff's equity seems to us to be plain.
That case was approved in Russell v. Wade, 146 N.C. 116, and the two cases distinguished in their facts by the following reasoning, though it was held there was no material difference, but both were governed by the same general and equitable rule: "The difference in the two cases consists in the fact that, in one, the defendant agreed to take the title to himself for the benefit of the plaintiff, whereas in the (21) other he was to take the option in the name and for the benefit of both, and in violation of his promise and his duty, he took it to himself. In one the wrong was in refusing to execute an express promise, upon the faith of which defendant got the property, whereas in the other defendant *Page 48 
took title in violation of his agreement. In the first case the court enforces the execution of an express parol trust. In this case the court declares defendant a trustee to prevent fraud ex maleficio." It had before been said in Avery v. Stewart, supra: "Trusts of the second class exist purely by construction of law, without reference to any actual or supposed intention to create a trust, for the purpose of asserting rights of parties or of frustrating fraud, and are therefore termed constructive trusts. The party guilty of the fraud is said in such cases to be a trustee exmaleficio and will be decreed to hold the legal title for the use and benefit of the injured party and to convey the same when necessary for his protection, as when one has acquired the legal title to property by unfair means. The jurisdiction is exercised distinctly upon the ground of the fraud practiced by the party against whom relief is prayed," citing Bispham on Equity (6 Ed.), sec. 79 and pp. 125, 216, 143; Wood v. Cherry,73 N.C. 116; Gorrell v. Alspaugh, 120 N.C. 362.
In Glass v. Hulbert, 102 Mass. 39 (2 Am. Rep., 418), the Court so states the principle as to make its application to our facts very transparent: "Where a party acquires property by conveyance or devise secured to himself under assurances that he will transfer the property to, or hold and appropriate it for, the use and benefit of another, a trust for the benefit of such other person is charged upon the property, not by reason merely of the oral promise, but because of the fact that by means of said promise he had induced the transfer of the property to himself."
When one has, by his promise to buy, hold, or dispose of real property for the benefit of another, induced action or forbearance of another relying upon said promise, it would consummate a fraud if the promise, so solemnly but deceptively made, should not be enforced. If (22) the plaintiff had suspected that the defendant intended to betray him by a false promise, and thus to mislead him into the adoption of a course of action which otherwise he would not have taken, or to cease efforts in the same direction and with the same end in view, which otherwise he would have continued, he would have withdrawn his misplaced confidence in defendant and have arranged with some other and more reliable person, equally able to assist him, in order to secure the same kind of benefit. Vestal v. Sloan, 76 N.C. 127; Johnson v. Hauser, 88 N.C. 388;Shields v. Whitaker, 82 N.C. 516; Thompson v. Newlin, 38 N.C. 338.
If we should permit defendant to profit by any such betrayal of the trust so implicitly and innocently reposed in him, it would be not only inequitable, but a reproach to the administration of justice. This view is further sustained by the language of Chief Justice Smith in Cheek v.Watson, 85 N.C. at p. 198: "Our conclusion upon the whole testimony *Page 49 
is that the defendant has deceived an embarrassed man into assent to the sale of his land to the defendant, through the trustee, by taking advantage of his distress and exciting false hopes, that the sale should not be pleaded as absolute, but that the land might be redeemed within a reasonable time. The trust would equally arise where the party relying upon the assurance is prevented from making arrangements with others by which he could have secured the same benefits promised by the purchaser." It will not do to say that the defendant was moved merely by friendly or benevolent considerations, and his promise was, therefore, voluntary, and, therefore, he may, at his option, refuse a compliance with it. Equitable considerations, we have described, constitute the foundation of almost every trust, and the fiduciary should be held to account as nearly as possible in the same spirit in which he originally contracted and to the same extent. Sandfoss v. Jones, 35 Cal. 481; Owens v. Williams, 130 N.C. at p. 168; Soggins v. Heard, 31 Miss. 428.
In Cousins v. Wall, 56 N.C. 43, Judge Battle states our case substantially, and says: "By paying his money and taking the legal title to himself, the defendant held the legal estate in trust to secure the repayment of the purchase money, and then in trust for the (23) plaintiff. The defendant never contracted to sell or convey the land or any interest therein to the plaintiff, for at the time of the agreement he had no title or interest in the land, and it was only by force of the agreement that he was permitted to take the legal title, and by the same act he took it in trust for the plaintiff. It is manifest that the statute of frauds does not apply."
The doctrine has been thus most aptly stated: Although no one can be compelled to part with his own title by force of a mere verbal bargain, yet when he procures a title from another which he could not have obtained except by a confidence reposed in him, the case is different. There, if he abuse the confidence so reposed, he is converted into a trustee exmaleficio. The statute which was intended to prevent frauds turns against him as the perpetrator of the fraud. It is not, therefore, the fact that the bargain by which he was enabled to obtain the title is verbal which governs the case, but the fact that he procured the title to be made to him in confidence, the breach of which is fraudulent and in bad faith.Sechrist's Appeal, 66 Pa. St., 237. Substantially to the same effect is the following statement of the Court in Carr v. Carr, 52 N.Y., at p. 260, after discussing the meaning and application of the statute of frauds: "It bars no other equity and precludes no one from asserting title against one who has thus taken a conveyance for a lawful and specific purpose and attempts to retain the property in violation of the arrangement and agreement under which he has acquired the formal title in fraud of the *Page 50 
real owner and against equity and good conscience. Manifestly such is the case now before us for adjudication, upon the judgment nonsuiting the plaintiff." Numerous cases in this Court have stated and applied the principle in the same way. Sykes v. Boone, 132 N.C. 199; Hargravev. King, 40 N.C. 436; Turner v. King, 37 N.C. 132; Cloningerv. Summit, 55 N.C. 513; Barnard v. Hawks, 111 N.C. 338, and other cases cited in Avery v. Stewart, supra, and Russell v. Wade, supra. "When one by parol agrees to procure a lease for himself and others, and does procure the lease in his own name, he is a trustee for those for (24) whom he agreed to act, and the statutes referred to have no application." Hargrave v. King, supra.
"The plaintiff's equity does not rest upon the idea of the specificperformance of a contract. The parties did not occupy the relation of vendor and vendee. The defendant did not agree to sell the land to the plaintiff, for at the time of this arrangement he did not have the land, or any interest therein, to sell; nor was the plaintiff to pay a price for it. But the plaintiff's equity rests upon the idea of enforcing the executionof a trust; and the facts show that the relation of the parties was that of trustee and cestui que trust."
The case of Falkner v. Hunt, 76 N.C. 202, would appear to be directly and expressly in point, leaving nothing to inference or speculation, as the facts of the two cases are so closely and intimately analogous. It was held that the statute of frauds did not apply, and that plaintiff's agreeing to charge the "mill site" with a trust in his behalf and for his benefit, jointly with defendant, was too plain for discussion, and, therefore, the Court merely states the facts and its conclusion without the citation of authority. See, also, Hanff v. Howard, 56 N.C. 440; 20 Cyc., 237 and 232.
The Court, in Neely v. Torian, 21 N.C. (Battle's Ed.), 410, after finding that defendant acquired title to land by a false promise, which deceived the plaintiff into assenting to his purchase of it, adjudged that he should hold as trustee, first, to reimburse himself the amount he had advanced, and then for the benefit of the plaintiff, who should pay the purchase money and receive the title by conveyance from the defendant, the Court saying that defendant had obtained the title by exciting false hopes in the plaintiff that the sale should not be treated as absolute, and taking advantage of him, and that, in conscience, he should not retain the unfair gains thus acquired by the deception, but could avail himself of the legal title only as a security for what he had advanced on the faith of it.
This Court, at the last term, decided a case in all essential respects like the one at bar. There a sale of the land was ordered, with *Page 51 
direction to pay the purchase money advanced by the defendant, and (25) then to divide the balance of the proceeds between the parties, according to their agreement. This Court affirmed the judgment (Andersonv. Harrington, 163 N.C. 140), holding that a trust had been created by contract, based upon a valuable consideration, to stand seized to the use of or in trust for another, as decided in Wood v. Cherry, supra, and that the statute of frauds did not apply, citing Riggs v. Swann, 59 N.C. 118. That is decisive of this case.
The other exceptions become immaterial, in view of what we have said. Even if there was any error in the rulings upon testimony, which we do not admit, it was so very slight as not to have affected the result. A reversal will not be granted unless the error is prejudicial. S. v. Smith,164 N.C. 475; McKeel v. Holleman, 163 N.C. 132; Steeley v. Lumber Co.,post, 27.
When the fund is paid into the court after the sale has been made, it will be distributed according to the agreement, the purchase money of the land paid to defendant, and then the balance divided equally between the parties.
No error.
Cited: Smith v. Hancock, 172 N.C. 153 (3f); Newby v. Realty Co.,182 N.C. 38, 39 (1f) (2f); Lefkowitz v. Silver, 182, N.C. 349 (1g) (2g);McNinch v. Trust Co., 183 N.C. 38 (1g) (2g); Bank v. Scott, 184 N.C. 315
(1f) (2f); S. v. Beam, 184 N.C. 742 (3f); Pridgen v. Pridgen, 190 N.C. 106
(1g) (2g); Leftwich v. Franks, 198 N.C. 292 (1p) (2p); Peele v. LeRoy,222 N.C. 126, 127 (1f) (2f); Creech v. Creech, 222 N.C. 663 (1g) (2g);Thompson v. Davis, 223 N.C. 794 (1f) (2f); Embler v. Embler, 224 N.C. 815
(1f) (2f); Atkinson v. Atkinson, 225 N.C. 128 (1d) 2d; Atkinson v.Atkinson, 225 N.C. 133, 134 (1j) (2j).