This case was here at a former term, and is reported in 180 N.C. at p. 51, to which we refer for a statement of the facts other than those to be found herein. The land was purchased at the sale thereof at public auction, and was bought in for the joint and equal benefit of the plaintiffs and the defendants, and under the new or substitute contract, which was in parol, previously made, the land was to be sold under an option and trust deed, plaintiffs to receive one-half of the net proceeds of the sale of real and personal property, and defendants the other half, and the property was to be held by the parties for resale; and, it was further provided that the farm should be cultivated during the year 1919, all of which was to be done at the sole expense of the defendants and without any personal obligation on the part of the plaintiffs, the land and crops, and other property, to stand as security to the defendants for any money so advanced or expended by them for the joint benefit of the parties, and in furtherance of their agreement. The profits from the whole transaction to be equally divided between the parties. It is alleged that defendants failed to perform the contract on their part and, instead thereof, that they entered into an agreement with other parties for the purpose of enabling them to relieve themselves of the burden of paying all the expenses, as they had contracted to do. Instead of paying the money due on the sale and to close the option for the purchase of the land, which was held by plaintiffs, defendants united with other parties, whom they (36) thought could assist them in raising the funds to pay for the land and to defray the other expenses, and took the title to *Page 38 
them jointly, the purpose being to break their contract with plaintiffs and to defeat or disregard their rights thereunder.
The judge nonsuited the plaintiffs, and they appealed.
After stating the case: When the case was here before, we did not consider the question as to the statute of frauds, because there was no exception requiring us to do so. But in this appeal there was a nonsuit, which may have been granted upon the ground that if there was a contract, as alleged, it was not in writing, and therefore defendants were not bound by it, although the plaintiffs may have established it by their evidence. We will, therefore, pass upon it, as the question is presented and may arise again unless disposed of by us now. In order to decide this question we must have a clear conception or understanding of the terms of the contract, and as there were tersely and lucidly stated by Judge Cranmer at the first trial of the case, we adopt what he said about them, though not literally. Plaintiffs contend, said he, that they made a contract with defendants on 6 December, 1918, under which it was agreed that the property be bought by them and held for resale for the joint account of both plaintiffs and defendants, they to share equally in all the profits, and that the farm was to be operated for their joint account, and that the profits from the farming were also to be divided equally; further, that all money necessary for the purchase of the land and the operation of the farm was to be furnished by the defendants, and that plaintiffs were not to furnish any money whatever or to become in any way liable for any money for the purchase of the land or the farming operations.
With this understanding of the salient features of the contract, we are of the opinion that it is not within the language or spirit of the statute of frauds, which provides that all contracts to sell or convey lands, or any interest in or concerning them, shall be void, unless the contract, or some memorandum or note thereof, be put in writing and signed by the party to be charged therewith, or by some other person by him thereto lawfully authorized. Rev. 976 (C.S. 988). There is no such contract in this case as is described in the statute. The plaintiffs have not contracted to sell or convey any land to the defendants, nor have the defendants agreed to (37) buy and pay for the same, nor vice versa. While the question was not considered in the opinion of this Court by *Page 39 
Justice Allen in the first appeal, the learned Justice thus referred to it when deciding as to the measure of damages: "In the first place, the plaintiffs are not asking to recover damages for breach of contract to convey land. If they had done so, and the contract had been in writing, the rule laid down by his Honor would have been the true measure of damages, being one-half of the difference between the option price and the market value of the land at the time of the breach, but being by parol, if one to convey the land, the statute of frauds would be a complete defense." Newbyv. Realty Co., 180 N.C. 51, at p. 53. He then continues, and states the terms of the contract very succinctly and clearly, as follows: "The plaintiffs are asking to recover damages for breach of a contract, by the terms of which, as they allege, the defendants agreed to furnish the money to take up the option, which expired on 1 January, 1919, and to sell the land and pay the plaintiffs one-half the profits, less one-half the expenses of sale, and to furnish the money for the cultivation of the lands for the year 1919, under the management of one of the plaintiffs, and to pay the plaintiffs one-half the profits from the crops." The parties contracted with reference to the profits to be realized upon a resale of the land, and not with the view of acquiring title to any part of the land. They already had the title, and the land itself was to be held in trust, for the purpose of realizing the profits by another sale of it.
The section of the English statute of frauds relating to declarations of trust was never adopted in this State, though enacted in the same or similar form in some other states of the Union. And in this distinction will be found the explanation of the minority decisions in such other states holding, in an action to raise and declare a trust, that the statute of frauds was applicable in those cases where, upon an agreement similar to this, title to the lands had been taken in the name of one party who wrongfully refused to execute the agreement. The majority view in all the states, however, is that to an agreement of this kind the statute of frauds has no application. 25 R.C.L., pp. 595-6-7; Morgart v. Smouse, 7 Ann. Cases, 1140. In the majority view of the courts such an agreement for the purchase of land for the purpose of resale is regarded, not as a contract to sell or convey lands, but as a contract of partnership or a joint venture, as the case may be, which contemplates, not the transfer of any interest in lands from one party to the contract to the other, but only a division of profits upon a resale of the lands.
In Morgart v. Smouse, supra, p. 1141, the Court said: "It has been repeatedly held in different jurisdictions that an agreement by two or more persons to buy land and sell it and share either the profits or the profits and losses constitutes them partners *Page 40 
(38) for that venture, and entitles either of them to an accounting in equity from the others of the joint transactions, . . . a verbal agreement being sufficient to constitute a partnership to deal in lands, the statute of frauds not being applicable to such a contract." Parsons on Partnership (4 ed.), sec. 6; Lindley on Partnerships, 88, 89, and other cases cited. In the note in Morgart v. Smouse, supra, p. 1142, it is said: "The widely accepted rule is that a partnership agreement between two or more persons that they will become jointly interested in a speculation for buying and selling lands is not within the section of the statute of frauds providing that no estate or interest in lands shall be created, assigned, or declared unless by acts or operation of law, or by a deed of conveyance in writing."
In this State, as stated above, and in effect, the only statute requiring consideration is Rev. 976, providing that contracts to sell or convey lands shall be void unless some sufficient memorandum thereof be reduced to writing. The uniform construction of this statute is that it has reference to those cases alone in which, as the result of sale, exchange or other form of bargaining, a conveyance of land is contemplated from one of the contracting parties to the other. By the uniform decisions of this Court, the statute has no application to those contracts whereby two persons agreed to purchase land, either generally or as a single venture, for the purpose of reselling the same at a profit and sharing the same between them. The reason for this is obviously that by such a contract no conveyance of land is intended between the parties to the contract forming the basis of the dispute. And where, consequently, such a contract has been entered into, and where one of the parties has thereafter taken the title to the lands in his own name and wrongfully refuses to execute the agreement, this Court has consistently held that he holds the land as a trustee for the purposes of the joint agreement, and that an action to declare and enforce the trust will lie, as will appear by the case ofBrogden v. Gibson, 165 N.C. 16, where the action was to declare and enforce a parol trust, upon facts practically identical with those in this case. The Court held that the action would lie, and that the statute of frauds had no application, citing ample authority in this State to support the ruling. Because of its close likeness to this case is excuse for quoting liberally from it.
In that case the Court said, at pp. 19 and 20: "While the defendant has not sold the land, so as to bring this case within the operation of the principle just stated, he has, by his agreement, charged it with a trust which equity will enforce, and the statute, fortunately for fair and honest dealing, is no protection to him. That he *Page 41 
is morally bound to its performance will not be questioned, and he is legally required to fulfill his promise. The law, upon this phase of the matter, is equally well established. We cannot doubt for a moment that the agreement was that the title to the (39) land should be taken in the name of the plaintiff, or, at least, in the joint names of the parties, as the plaintiff was authorized to sell as well as to buy the lots, and everything necessary to carry out this purpose is implied. It surely was not intended that defendant should be able to block the execution of the agreement by taking the title to himself and refusing to convey. But even if it was the purpose that he should have the title to it, the agreement was that he should hold it for the joint benefit of himself and the plaintiff, and upon the faith of this promise he acquired the title, and will not be permitted to hold it discharged of this obligation, but only in trust for the uses declared in the agreement. The further consideration for the promise was that the plaintiffs should contribute their skill and labor in securing the property for the purpose of the joint enterprise. This they have done fully and faithfully, and equity will not disappoint their reasonable expectation that defendant would not take the benefit of this skill and labor and refuse to execute the trust and confidence reposed in him." In the same case, p. 22, the Court said: "If we should permit defendant to profit by any such betrayal of the trust so implicitly and innocently reposed in him, it would be not only inequitable, but a reproach to the administration of justice." Andersonv. Harrington, 163 N.C. 140.
A comparison of the cited case, Brogden v. Gibson, supra, with the instant case will show a strong similarity of facts, and certainly a substantial one. In both cases there was an agreement that defendant furnish the money to purchase the land — the title to be taken, in the cited case, either in the plaintiff's name or the names of both parties — and in both cases again the original owner of the property conveyed the same, not according to the terms of the agreement, but in the cited case, by the wrongful inducement of the defendant, to the defendant alone, and in the instant case, by the wrongful inducements of the defendants, to the defendants and other, perhaps, innocent, parties, so as practically to preclude an enforcement of the trust. In neither case was there such an execution of the agreement as to remove the bar of the statute of frauds if otherwise applicable. So that here the defendant's contention, based upon the imaginary distinction, that in the cited case the contract was executed, so far as it contemplated a conveyance of land, is untenable. The only conveyance of land contemplated by the contract sued on was the conveyance from Fleetwood to the corporation, *Page 42 
which plaintiffs and defendants agreed to form, and of which the defendants were to hold all the stock as security until their scheme or project was fully consummated. Fleetwood's contract with the plaintiffs to convey the land was evidenced by a written option, and Fleetwood, furthermore, is not a party to this suit. By (40) the wrongful inducement of the defendants, Fleetwood has, as did the vendor in Brogden v. Gibson, supra, conveyed the lands to the defendants and their associates, in violation of the agreement and plaintiffs' equitable rights thereunder. It cannot be contended that the defendants, who, if they had taken title to the lands in themselves alone, would have been charged with a trust in plaintiffs' favor, can, by the ingenious and wrongful method of associating other, perhaps innocent, parties in the acquisition of the title, bar the plaintiffs of all relief. If the lands in defendants' hands, as is well established, would be chargeable with a trust in plaintiffs' favor, it is because the agreement between plaintiffs and defendants was a valid agreement, unaffected by the statute of frauds.
That this contract is not within the statute of frauds is strikingly illustrated by Michael v. Foil, 100 N.C. 178, where it was held by this Court that an agreement, made at the time of the sale of land, and as an inducement thereto, that if a certain mineral interest thereon was sold in the grantor's life time he was to have one-half of the price, is not a contract for an interest in land. See, also, Houston v. Sledge,101 N.C. 640; Ambrose v. Ambrose, 19 S.E. Rep. (Ga.) 980. And still more to the point is Trowbridge v. Wetherbee, 11 Allen (Mass.) 361, cited and approved in Michael v. Foil, supra, where it was held that a parol promise to pay to another a portion of the profits made by a promisor on the purchase and sale of real estate, is not within the statute of frauds, and may be proved by parol. See, also, Sherrill v. Hagan,92 N.C. 345.
If the agreement was a valid one, and the defendants have not only wrongfully breached it, but sought to thwart or forestall the plaintiffs in the enforcement of the trust by the association with them of other innocent and bona fide purchasers for value, and without notice of the trust, then it follows, both in reason and upon authority, that the plaintiffs may properly assert their right through the medium of this action to recover damages for a breach of the trust or the contract, or to follow the fund they have received for the land. Ledford v. Emerson, 140 N.C. 288; 6 Anno. Cas., p. 107, and cases cited; Owen v. Meroney, 136 N.C. 475; 1 Ann. Cas. 834; Newby v. Harrell, 99 N.C. 149, and especially Campbell v. Everhart,139 N.C. 503; May v. LeClaire, 11 Wallace (U.S.) 217 (20 L.Ed. 50).
Plaintiffs have an election of remedies. They may sue for specific *Page 43 
performance, which would require that the new associates of Ferrell be made parties, so that it might be determined whether they are purchasers bona fide and for value, and without notice of plaintiffs' equity. If they were not, they would be bound by the original contract between plaintiffs and defendants, and if they were, defendants would be liable to a money judgment in lieu of plaintiffs' right to specific performance which they had lost (41) by defendants' wrongful act; and, second, plaintiffs could waive their right to specific performance and recover damages for a breach of the contract, or a violation of the trust, which they have chosen to do in this action. 39 Cyc. 572; Seymour v. Freer, 8 Wallace (U.S.) 202 (19 L.Ed. 306); Taylor v. Benham, 5 Howard (U.S.) 233 (12 L.Ed. 130). But there is no contention about plaintiffs' right to recover, as we understand it, if the contract is valid, and there was evidence to show that it was made between the parties as alleged. There was clearly a consideration to support it.
This brings us to the second proposition, as to the sufficiency of the evidence to show the contract. We have examined the same carefully, and conclude that there was, as least, some evidence which should have been submitted to the jury. The testimony of the witnesses, Newby and Weeks, corresponds with the allegations of the complaint, and, if accepted by the jury as true, entitled plaintiffs to their verdict. It would be of little value in the discussion to recite their testimony here, the only question being whether there was any evidence as to the contract alleged in the complaint. Both Newby and Weeks gave testimony to the effect that the contract, as alleged, was entered into and that defendants had failed to comply with it. The plaintiffs, in their brief, insist that the learned judge, who presided at the trial, decided the case and ordered the nonsuit upon the ground that a recovery was barred by the statute of frauds. We have disposed of this plea.
On a motion by the defendant for a nonsuit under the statute, or on a demurrer to the evidence, the latter must be construed most favorably to the plaintiff, and every fact essential to the cause of action, which it tends to prove, must be taken as established, and plaintiff also is entitled to the most favorable inferences deducible therefrom, considering only so much of the evidence as is favorable to the plaintiff and rejecting that which is unfavorable. Sikes v. Life Ins. Co., 144 N.C. 626; McCaskillv. Walker, 145 N.C. 252; Cotton v. R. R., 149 N.C. 227; Thompson v. R.R., ib., 155; Morton v. Lumber Co., 152 N.C. 54; West v. Tanning Co.,154 N.C. 44. This rule prevails generally in other jurisdictions. Pinson v.Railway Co., 85 S.C. 355. Applied to this case the evidence is, in law, fully sufficient to establish plaintiffs' cause of action if taken to be *Page 44 
true, as it should be. It makes no difference if there are discrepancies in it, or inconsistencies, or even contradictions, as the jury must determine which part is true and not the court.
But, whichever way we take it, there was error in nonsuiting the plaintiffs, and there must be a new trial so that the jury may pass upon the facts.
New trial.
Cited: Improvement Co. v. Brewer, 183 N.C. 249; May v. Menzies,184 N.C. 153; Newby v. Realty Co., 184 N.C. 617; Smith v. Coach Line,191 N.C. 591; S. v. Gibson, 193 N.C. 489; Leftwich v. Franks, 198 N.C. 292;Baucom v. Bank, 203 N.C. 828; Lincoln v. R. R., 207 N.C. 788; Dozier v.Wood, 208 N.C. 416; Fox v. Army Store, 215 N.C. 191; Peele v. LeRoy,222 N.C. 126; Creech v. Creech, 222 N.C. 663; Gregory v. Ins. Co.,223 N.C. 128; Pappas v. Crist, 223 N.C. 267; Embler v. Embler, 224 N.C. 815.
(42)