SNOW HILL BANKING & TRUST COMPANY v. D. J. ODOM DRUG COMPANY, D. J. ODOM AND R. B. TYER, ET AL.

(Filed 3 December, 1924.)

1. **Corporations—Statutes—Charter—Ultra Vires Acts—Partnership.**

While the principles of law constituting a partnership are not readily defined as applied to all instances, they are held ordinarily to exist when two or more persons contribute either property or money, or both, to carry on a joint business for their common benefit and to own and share in the profits thereof.

2. **Same—Banks and Banking—Trust Companies—Sales—Dissolution— Evidence—Questions for Jury.**

Where a banking and trust company has bought out a drug business to save a debt owed to the former by the latter, and has agreed with two others for its continued operation upon a division of the profits, the bank

putting in the stock of goods and some money, and the others a certain sum each, the latter taking the active management, with privilege of buying out the interest of the bank out of the profits or otherwise, this arrangement is in effect an agreement of partnership; and where the bank has since taken a mortgage for the amount of its investment, the question as to whether the partnership had been thereby dissolved on issue raised is one for the jury under the evidence.

**3. Same—Appeal and Error—Record—Burden to Show Error.**

While the act of a corporation in acquiring and conducting a business distinct and separate from that contemplated or authorized by its charter is ordinarily considered void as an *ultra vires* act: *Held*, in this case, the burden of showing error being on the appellant, such error is not necessarily made to appear when the charter of a certain "banking and trust company" is not in evidence and no data given from which the powers thereby conferred may be ascertained.

**4. Banks and Banking—Purchase of Bad Debt—Partnership—Ultra Vires Act.**

Conceding, however, that the plaintiff company has only the ordinary powers of a banking corporation, and, as such, may not usually engage as a partner in an unrelated business enterprise, this rule is subject to the limitation that a bank that has acquired and taken over property pledged to secure an indebtedness contracted in the regular course of its business may at times enter into a separate and established business enterprise to an extent reasonably required to enable it to realize on the property with a view of converting the same into bankable asset.

**5. Banking Company—Partnership—Application of Investment to Creditors.**

In such case and in any event a banking corporation should be held liable to creditors at the instance of the copartner to the extent of the property put in the business, the arrangement to the amount of the investment being an executed contract giving such copartners the equitable right to have the assets so applied.

CIVIL ACTION tried before *Horton, J.,* and a jury, at December Term, 1923, of GREENE.

From a perusal of the record and case on appeal, it appears that plaintiff, holding a mortgage with power of sale for $6,500 acquired in June, 1922, on the stock of goods, fixtures, etc., of the D. J. Odom Drug Company, brought claim and delivery and took said stock in possession, and pending said suit—defendants D. J. Odom and R. B. Tyer, instituted an action against plaintiff on averments, in effect, that these two defendants and plaintiff were, in fact and in truth, partners conducting a drug business under the style of D. J. Odom Drug Company, that plaintiff having taken over goods in payment of a debt incurred by former owners of the stock to the bank for borrowed money, plaintiff and these two defendants entered into a partnership, the bank putting in said stock valued by them at $5,500 and $1,000 additional

43—188

thereto, and defendants each putting in $500, business to be under control and management of D. J. Odom according to the terms of a written agreement hereafter set out, which said agreement gave to Odom and Tyer the right to buy out said business on terms therein specified, that the mortgage was given merely as an evidence of the amount that the bank had invested in the partnership, and for no other purpose and that the goods covered by same constituted a portion of the partnership assets. That the agreement under which the bank and Odom and Tyer engaged in the business has date of 12 May, 1922, was in terms as follows:

This agreement by and between the Snow Hill Banking & Trust Company, parties of the first part and D. J. Odom and R. B. Tyer, parties of the second part:

Witnesseth: That the parties of the first part agree to furnish the "drug-store fixtures and furniture, soda fountain and all goods, merchandise, medicines," etc., now on hand in the drug store situated in the Dail Block in the town of Snow Hill and the parties of the second part agree to furnish $1,000 dollars to restock said drug store and the Snow Hill Banking & Trust Company agrees to furnish $1,000 to help restock said drug store and said parties of the second part agree to manage and run said drug store for one-half of the net profits and the parties of the second part agree not to take out of said business more than $100.00 per month which, when withdrawn, shall be charged to the parties of the second part as part of their one-half of the net profits. It is understood that the parties of the second part shall report to the parties of the first part each month the condition and state of the business, its indebtedness, etc.

It is understood and agreed that the parties of the second part shall have the right to purchase said business at any time by paying to the Snow Hill Banking & Trust Company the amount said bank has invested in said business at said time. It is agreed that the Snow Hill Banking & Trust Company has invested in said stock, fixtures, furniture, soda fountain and goods, $5,500 besides the $1,000 which they agree to furnish to help replenish the stock and it is agreed that Exhibit "A" the one-half of the profits to be received by the parties of the first part shall be applied to liquidate said amount held by the Snow Hill Banking & Trust Company, and such amounts that may be furnished to said business by the parties of the first part.

Witness our hands and seals, this the ........ day of May, 1922.

C. L. BLOUNT, *Cashier,* (SEAL)

D. J. ODOM            (SEAL)

R. B. TYER            (SEAL).

And a subsequent agreement entered into at time plaintiff took the mortgage it now seeks to enforce, was as follows:

This is to certify that this bank is to give the Odom Drug Company extensions on their sixty-five hundred dollar note dated 5 June, 1922. The extensions to be given from time to time until finally paid, though it is also understood that reasonable payment will be made on same to the amount of at least twenty-five dollars per month, though in case some months if that amount can't be paid by the Odom Drug Company, then they will be given further consideration by accepting what payments the drug company can make. It being fully understood by the drug company and this bank that the business is to pay for the note as the profits are made on the business unless Mr. Odom decides to take up the note or balance due on same at any time and thereby own the business in its entirety.

This agreement made this the 5th day of June, 1922.

SNOW HILL BANKING & TRUST CO.
C. L. BLOUNT, *Cashier.*

It also appears of record that the firm assets, including stock of goods, fixtures, etc., having been ordered by the court placed in the hands of receiver, by consent of all parties, have been sold for a satisfactory price, and placed in the plaintiff bank to be held subject to distribution and orders of court made in the cause.

It appeared that another suit was instituted by plaintiff against Odom and Tyer on a note of $118.43 on matters growing out of controversy, judgment thereon before a justice of the peace and appeal taken by parties defendants which was pending in Superior Court. Again there were two suits against the partnership of D. J. Odom Drug Company by creditors of alleged firm, one by Powers-Taylor Drug Company and a second by the Vaughan-Robeson Drug Company.

On denial of any and all liability in the suits as described, these five causes were consolidated and tried at the term of the Superior Court stated, before his Honor, J. Loyd Horton, judge, and a jury and the following verdict rendered:

1. Did the Snow Hill Banking & Trust Company become a member of the firm of Odom Drug Company by virtue of the agreement dated 12 May, 1922? Answer: "Yes."

2. Did the defendant, Snow Hill Banking & Trust Company sell its interest in said firm, and retire therefrom on 5 June, 1922, as alleged? Answer: "No."

3. If so, was said sale of Snow Hill Banking & Trust Company and its retirement from said firm done with the knowledge and consent of the defendant, Tyer? Answer: .......

4. If not, has the defendant, Tyer, ratified said action? Answer: "No."

5. In what amount, if any, is the Odom Drug Company indebted to the Powers-Taylor Company? Answer: "$361.00, with interest."

6. Was the Snow Hill Banking & Trust Company a member of the firm of the Odom Drug Company at the time said debt was contracted? Answer: "Don't answer."

7. In what amount, if any, is the defendant, Odom Drug Company, indebted to the Vaughan-Robertson Drug Company? Answer: "$702.36, with interest."

8. Was the Snow Hill Banking & Trust Company a member of the firm of the Odom Drug Company at the time said debt was contracted? Answer: "Don't answer."

9. Is the Snow Hill Banking & Trust Company the owner and entitled to possession of the property described in the complaint? Answer: "No."

10. What was the value of said property at the time of the seizure? Answer: "$6,500."

11. Did the Snow Hill Banking & Trust Company wrongfully seize said property, under claim and delivery proceedings, as alleged? Answer: "Yes."

On said verdict the court entered the following judgment:

The above named cause coming on to be heard at the December Term, 1923, of Greene Superior Court, before Horton, J., and a jury, and by consent of all parties, the above entitled five cases having been consolidated, and tried in one case, and the jury having answered the issues submitted by the court as hereinafter set out, and it appearing to the court that the first of these actions was a proceeding in claim and delivery, brought by the Snow Hill Banking & Trust Company, against the Odom Drug Company, D. J. Odom and R. B. Tyer, for the recovery of certain personal property described in the affidavit filed in said action and following this suit, D. J. Odom and R. B. Tyer instituted an action against the Snow Hill Banking & Trust Company, asking that it be restrained from selling said property and for the appointment of a receiver, to take charge of and preserve said property.

And that pursuant to said proceedings a temporary restraining order and the appointment of a temporary receiver was made, which said temporary restraining order came on for hearing before J. Loyd Horton, resident judge of the 5th Judicial District, at chambers, in the town of Farmville, North Carolina, on the ... . day of .... ........ , 1923, at which time and place it was, by consent of all parties, ordered and adjudged that Walter G. Sheppard and George M. Lindsay be appointed as receivers to make sale of said property privately for the sum of $6,500, and that the funds realized from said sale be turned over to

the Snow Hill Banking & Trust Company, as trustee, until the final trial of this cause and that said action was had by said receivers and that the said sum of $6,500 is now held by the Snow Hill Banking & Trust Company, trustee, as aforesaid.

And it further appearing to the court that the Snow Hill Banking & Trust Company brought suit against D. J. Odom and R. B. Tyer, before a magistrate, for the recovery of a note for $118.63, which note grew out of the matters in controversy herein.

And it further appearing to the court that the Powers-Taylor Drug Company instituted an action entitled as above, against the Snow Hill Banking & Trust Company, D. J. Odom and R. B. Tyer, trading as the Odom Drug Company, on an open account of $361, and that the Vaughan-Robertson Drug Company instituted an action for the recovery of the sum of $500, and at the beginning of this trial was permitted, by consent, to amend their complaint to ask for the sum of $702.86. And the court having submitted the following issues, which were answered as hereinafter set out by the jury:

The court instructed the jury, as a matter of law, to answer the first issue, "Yes," and the jury having failed to answer issues six and eight, under the instructions of the court, the court thereupon, as a matter of law, answered said issues in the affirmative.

It is therefore ordered, adjudged and decreed that the Snow Hill Banking & Trust Company, D. J. Odom and R. B. Tyer, were at all times, from 12 May, 1922, up and prior to the institution of these actions, partners trading under the firm name of the Odom Drug Company and as such are jointly and severally liable for the obligations of said firm.

It is further ordered, adjudged and decreed, that the said mortgage executed by D. J. Odom to the Snow Hill Banking & Trust Company, on 5 June, 1922, together with a note for $118.63 executed on ........ March, 1923, to the Snow Hill Banking & Trust Company by D. J. Odom and R. B. Tyer, be and the same are hereby canceled and of no effect.

It is further ordered, adjudged and decreed that the proceeds of the sale of the property belonging to said firm, now held by the Snow Hill Banking & Trust Company, trustee, as aforesaid, be applied to the payment of the obligations of the firm of the Odom Drug Company, and to that end, it is ordered that Walter G. Sheppard and George M. Lindsay, receivers, hereinbefore appointed, be, and they are hereby directed to proceed to the dissolution of said firm, giving notice to all known creditors of said firm, and further notice to other creditors by due advertisement in some newspaper published in Snow Hill for once a week for four weeks, notifying said creditors to file their claims with

said receivers on or before sixty days from the date of publication of said notice, or said notice will be pleaded in bar of their recovery, and that said proceeds of the sale above mentioned be placed by the said Snow Hill Banking & Trust Company at the disposal of said receivers to be applied by them as aforesaid on the obligations of the firm and to hold the balance thereof for the further orders of this Court.

It is further ordered, adjudged and decreed that the Powers-Taylor Drug Company recover of the Snow Hill Banking & Trust Company, D. J. Odom and R. B. Tyer, trading as the Odom Drug Company, the sum of $361 with interest from 20 January, 1923, and the cost of said suit to be taxed by the clerk, and that the Vaughan-Robertson Drug Company recover of the Snow Hill Banking & Trust Company, D. J. Odom and R. B. Tyer, trading as the Odom Drug Company, the sum of $702.86, with interest from 15 February, 1923, together with the cost of said action to be taxed by the clerk.

It is further ordered and decreed that the costs of the actions above entitled between the Snow Hill Banking & Trust Co., D. J. Odom and R. B. Tyer, be, and they are hereby taxed against the Snow Hill Banking & Trust Company.

J. LOYD HORTON,<br>Judge Presiding.

The Snow Hill Banking & Trust Company excepted and appealed assigning for error, among others, the ruling that the agreement constituted partnership between the bank and D. J. Odom and R. B. Tyer.

*J. Paul Frizzelle, George M. Lindsay for plaintiff.*
*Martin & Sheppard for defendant.*

HOKE, C. J., after stating the case: For general application it is recognized as difficult to give an adequate and satisfactory definition of a partnership. Probably that approved by *Associate Justice Gray,* in *Meehan v. Valentine,* 145 U. S., pp. 611-623, is at once as accurate and comprehensive as any that suggests itself. Delivering the opinion in that case it was said by the learned judge: "In the present state of the law on the subject, it may perhaps be doubted whether any more precise general rule can be laid down than, as indicated at the beginning of this opinion, that those persons are partners, who contribute either property or money to carry on a joint business for their common benefit, and who own and share the profits thereof in certain proportions." Other definitions in our own reports, correct as to the facts therein presented, appear in *Gorham v. Cotton,* 174 N. C., p. 727; *Fertilizer Co. v. Reams,* 105 N. C., pp. 283, 296; *Mauney v. Coit,* 86 N. C., p. 464. In *Gorman's*

*case,* by way of further illustration, the opinion quotes also the definition given in *Karrick v. Hannaman,* 168 U. S., p. 328 as follows: "A contract of partnership is one by which two or more persons agree to carry on a business for their common benefit, each contributing property or service, and having a community of interest in the profits." Within the terms and meaning of any of these definitions, we are of opinion that the contract between the bank and trust company and D. L. Odom and R. B. Tyer, has been properly held a partnership, so far as the bank and trust company are authorized to enter into such an agreement, and on the facts of this record, we find no present reason for disturbing the verdict on that issue, and the results that have been deduced from it. As we understand its position, appellant does not seriously insist but that the original agreement in form constitutes a partnership between appellant and the other two members, but it is contended that same was, in effect, put an end to in June, 1922 when, as appellant claims, the bank withdrew by selling out its interest taking the note and mortgage sued on to secure the purchase price. It will suffice in answer to this position to note that the question of whether there was a sale and conse- quent dissolution in June, 1922, was submitted to the jury on a separate issue No. 2, and their verdict was against the sale as claimed. The questions debated, therefore, by appellant on whether such sale had been authorized by Tyer, one of the alleged partners, or ratified by him— and whether proper notice had been given to creditors of the alleged dissolution, is no longer material. Considering the record in reference to the manner that this issue was submitted and answered by the jury, this finding of fact, in effect, determines that there has never been any dissolution of the alleged partnership, as far as same is expressed and controlled by the agreement.

It is further and very earnestly contended that appellant being a banking institution is not authorized to enter into a partnership agree- ment of the kind presented, and that same is so far *ultra vires* that no liability can be enforced against appellant by reason of it. It is un- doubtedly the general rule that a corporation, especially a banking institution, is not allowed to enter into a separate business entirely foreign to the purposes as contemplated and authorized by its charter, and that executory agreements in such an enterprise imposing liability are not binding. *Victor v. Mills,* 148 N. C., pp. 107-111; *Wiswall v. Plank Road Co.,* 56 N. C., p. 183; *First National Bank v. Converse,* 200 U. S., p. 425; *Central Transportation Co. v. Pullman Car Co.,* 139 U. S., 24; *Harding v. Glucose Co.,* 182 Ill., 551; 3 R. C. L., p. 422, and authorities cited. In answer to this proposition it may be suggested first, that this appellant corporation bears the title of the Snow Hill Banking & Trust Company. The charter of the institution

is not in evidence, nor does the record contain any data or reference by which the court is enabled to ascertain its powers or the limitations upon it. We know that these trust companies are not infrequently possessed of very enlarged privileges extending into various kinds of enterprises—and acting on the position that there is always a presumption against error in a completed judicial proceeding, the exception here might well be disallowed because no lack of power is shown. *R. R. v. Nichols,* 187 N. C., p. 153; but conceding that in the present case the appellant by its charter has only the usual privileges of a banking institution, we are of opinion that no reversible error has thus far been shown; for though the general rule be as stated, it is fully recognized as a proper limitation upon it that when a banking corporation has acquired and taken over property pledged to it to secure an indebtedness contracted in its regular course, it may enter into a separate and established business or enterprise to the extent reasonably required to enable it to realize on the property with the view of constituting it bankable asset, a position that is assuredly true as to a State institution. Thus in the case of *Emigh v. Earling,* 134 Wis., 565, the right of a bank to take over and operate a creamery business was, to some extent, presented and the bank was held liable to account to shareholders for moneys realized in the conduct of business, the decision in that case being approved on writ of error by the Supreme Court of the United States. 218 U. S., p. 27. True that both in the State and Federal Courts the decision was made to rest on the ground that the bank, having acquired and holding the funds belonging to the shareholders, could be held to account for same regardless of the doctrine of *ultra vires* or the effect of it, but in both courts the limitation in the general rule is fully recognized, and in the State decision, *Dodge, J.,* speaking to the question among other things said: "The conclusion of the trial, is attempted to be averted by most vigorous contention that it is wholly beyond the power of a national bank to engage in creamery business, and much citation is made of Federal authority to that effect. The exact limits of the power of a bank which, being a creditor, becomes possessed of property or property rights in various forms as security, to do acts in management or improvement of such property or development of such rights, in order to render them valuable, to the end, in good faith, or thereby securing liquidation of the debts to it, is quite indefinite, and doubtless public policy requires that a bank, like an individual, should have broad powers to the exercise of discretion and judgment, to the end that property or rights so held as security be rendered as valuable as possible, so that it may not lose that which it ought to collect." The position finds further support in *Shawnee Nat. Bank v. Grocery Company,* 34 Okla., p. 34; *Reynolds v. Simpson,* 74 Ga., p. 454; *Bank v.*

*Bannister,* 7 Kan. App., 787; *Roebling Son's Co., v. First Nat. Bank,* 30 Federal, 744. And in our own Court the cases of *Bank v. Lacy, ante,* pp. 25-29 and *Sherrill v. Trust Co.,* 176 N. C., p. 591, are in full recognition of the principle. Considering the agreement in view of these authorities, here was a bank, that to secure a debt contracted to it in its regular course of business, had taken over the stock of goods, and fixtures of a drug store of the value of $5,500. Desiring to realize on the goods, it entered into the partnership agreement adding to the stock $1,000 in money and the other two partners put in $500 each, one of them to be in control and management of the business—it appears that the agreement, apparently drawn with care, with a view of protecting the bank and all concerned. Operating in the same town, it will be noted that the other partners were not allowed to take out more than $100 per month on their part of the profits during the continuance of the business and are required to make monthly reports to the bank, as to the condition and state of business, indebtedness, etc. Under these circumstances, we are of opinion, on the facts as now presented, the agreement was within the powers of the bank, and assuredly so as to the property put into the business. As to that it has become an executed contract giving to the other parties to the agreement the right to have the assets applied to the payment of the debts contracted in the name of the partnership. *Chemical Co. v. Walston,* 187 N. C., p. 817; *Farmer v. Head,* 175 N. C., p. 273. Possibly if, in the further development of the case, it should appear that the debts are so extensive as to threaten the solvency of the bank, it may be that on application of the stockholders, or even the directors, the claims against the alleged partnership could be restricted to the amount of the funds and property invested, on the general principles prevailing in our statutes on the subject of limited partnership, C. S., ch. 64, and constituting the bank a special partner to the extent of its investment—not under the statute referred to, for the provisions have not been complied with, but assimilated to it by reason of the limitations imposed by the charter of the bank, if existent, and when properly made to appear. But no such question is now presented, nor is there any suggestion or evidence tending to show that there are debts in excess of the assets.

The judgment of the court is, therefore, affirmed and the receivers, as directed, will proceed to an ascertainment of the debts, and to that end, the same be paid out of the assets now in the hands of the bank, and the surplus, if any, divided in proportion to the respective investments of the parties. Gilmore on Partnership, p. 394.

There is no error and the judgment below is affirmed.

No error.