Plaintiff alleged and offered evidence tending to show that prior to 16 July, 1926, he was the owner and developer of Lindhurst, a real estate subdivision located in the western section of the city of Greensboro. On 16 July, 1926, he sold and conveyed to Fannie E. Welborn, subject to certain encumbrances recited in said deed, which the grantee assumed and agreed to pay, the following described lots in said subdivision: Lots 3, 4, 5, 6 and 7. The grantee, Fannie E. Welborn, in order to secure the balance of the purchase money on said lots, executed and delivered to the plaintiff a series of notes secured by deed of trust upon the property.
The plaintiff further alleged and offered evidence tending to show that the defendants, J. D. Franks and C. W. Gold, "jointly owned a certain lot located on Walker Avenue . . . in the city of Greensboro," and that the title to said property was in the name of the defendant Franks "by and with the consent of defendant, C. W. Gold"; that on or about 1 October, 1926, Fannie E. Welborn conveyed to W. F. Manson said lots 3, 4, 5, 6, and 7, of the Lindhurst subdivision, and in exchange therefor J. D. Franks conveyed to said Fannie Welborn the Walker Avenue property. The plaintiff alleged that Fannie Welborn and Franks and Gold mutually agreed that each party to the conveyances would assume the payment of all mortgages and prior encumbrances that existed on the property that each party received in the trade. In the deed from Fannie Welborn to Manson there was a recital to the effect that the grantee would assume the payment of said encumbrances specified in detail in said recital, aggregating $11,015.55.
Plaintiff learned of the conveyance by Fannie E. Welborn in October, 1926. As a result of his conversation with Mrs. Welborn he made demand upon the defendant Franks to pay one of the notes which had matured. In response to said demand the defendant Franks paid to the plaintiff Leftwich $738.59. Later on the defendant Franks and the defendant Gold executed a note which was discounted, and from the proceeds thereof the sum of $2,411 was paid on said indebtedness.
It appeared in evidence that the defendant Manson was employed by the First Realty and Loan Company, of which defendant Franks was president. Manson was offered as a witness by the plaintiff and testified *Page 291 
that he knew nothing of the transaction and had never seen the deed from Mrs. Welborn, and that he was not a partner with the defendants, Franks or Gold, and had nothing to do with the negotiation or the exchange of property.
The plaintiff further testified that he had various conversations with the defendant Franks in regard to the payment of his notes, and that Franks delayed making payment on the ground that he had not been able to confer with "his partner." Subsequently plaintiff conferred with the defendant Gold about the payment of the Welborn notes, and the defendant Gold referred to the notes as "our notes on those Lindhurst lots," and requested plaintiff to send him a statement of the amount owing on the notes, and the plaintiff complied with the request, sending an itemized statement of all notes and the amounts due thereon. Upon another occasion, when plaintiff was making demand upon Gold for payment, said defendant asked plaintiff, "L. B., how much do we owe you on that stuff at the present time, altogether?" Later on in the conversation, Gold remarked: "What discount will you allow me if I will pay off the full amount of that thing right now?" Thereupon plaintiff made a proposition to allow $300 discount, and Gold said "that the proposition sounded all right to him, but before taking up the notes he wanted to talk with his partner, Franks, telling me to hold the notes and he would see me in the meantime and let me know at ten o'clock the next morning." Plaintiff testified that next morning Gold called him and informed him that he had definitely decided to take up the notes and get the discount. Subsequently Gold notified plaintiff that he could not settle the matter right now as he was "having the title looked up, and until I get that done I do not want to go into it further." In a day or two the defendant Gold notified the plaintiff that he would not proceed further with the matter or pay off the notes. Plaintiff testified: "I said, C. W. (Gold), you do not question that you are the owner of these lots?" He said, "There is no question about ownership. I just did not sign any papers; therefore, I am not legally liable."
The balance due on the notes was $4,344.33. Plaintiff took a voluntary nonsuit as to the defendant Manson, and at the conclusion of plaintiff's evidence the court sustained the motion of nonsuit as to defendant Gold.
The following issues were submitted to the jury:
1. "Did the defendant Franks assume the payment of the notes executed by Mrs. Fannie Welborn to the plaintiff L. B. Leftwich as set out and alleged in the complaint?"
2. "If so, what amount, if any, is the plaintiff entitled to recover of defendant Franks?" *Page 292 
The jury answered the first issue "Yes," and the second issue, $4,343.23."
Judgment was rendered upon the verdict, from which judgment the defendant Franks gave notice of appeal, but did not perfect his appeal.
Plaintiff appealed from the judgment of nonsuit as to C. W. Gold, and the sole question now before us is raised by said judgment of nonsuit.
The plaintiff alleged that the defendants, Franks and Gold, were partners in the real estate business, and as such partners owned the Walker Street property. The jury by its verdict has found that the defendant Franks assumed the payment of the notes executed by Mrs. Welborn and payable to the plaintiff.
Therefore, the determinative question is whether there was sufficient evidence of partnership between Franks and Gold to be submitted to the jury.
The general law of partnership applies to a partnership formed for the purpose of buying, selling, and dealing in land. Brogden v. Gibson,165 N.C. 16, 80 S.E. 966; Gorham v. Cotton, 174 N.C. 727,94 S.E. 450; Newby v. Realty Co., 182 N.C. 34, 108 S.E. 323;Lefkowitz v. Silver, 182 N.C. 339, 109 S.E. 56; Justice v. Sherard,197 N.C. 237.
In the Gorham case, supra, the law was thus stated: "that, to make a partnership, two or more persons should combine their `property, effects, labor, or skill in common business or venture, and under an agreement to share the profits and losses in equal or specified proportions, and constituting each member an agent for the others in matters appertaining to the partnership and within the scope of its business.'" It was further held "that in order to constitute a partnership it is necessary that there should be something more than the joint ownership of property; that mere community of interest by ownership is sufficient to create a tenant in common; that, before there can be a partnership, there must be an agreement for community of profits and loss." Robinson v. Daughtry, 171 N.C. 200,88 S.E. 252; Bank v. Odom, 188 N.C. 672, 125 S.E. 394.
Viewing the evidence with that liberality which the law prescribes, we are of the opinion that the judgment of nonsuit, as to Gold, should be reversed.
Reversed. *Page 293